**UNITED STATES of America,
Appellee,**

v.

**Ellis WILLIAMS, Appellant.**

**Nos. 99–3050, 99–3104, 99–3108.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 17, 2000.

Decided June 23, 2000.

Edward C. Sussman, appointed by the court, H. Heather Shaner, appointed by the court, and Gregory L. Poe, Assistant Federal Public Defender, argued the cause for appellants. With them on the briefs was A. J. Kramer, Federal Public Defender.

Jean W. Sexton, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher, Assistant U.S. Attorney. Asuncion C. Hostin, Assistant U.S. Attorney, entered an appearance.

Before: WILLIAMS, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

In the District of Columbia, taxicabs must be inspected every six months. A sticker affixed to the windshield signifies that the vehicle has passed inspection. The three defendants in this appeal had worked as motor vehicle inspectors at one of the District's inspection stations. While so employed they engaged in a conspiracy to sell inspection stickers to taxicab drivers and others. A jury found one of the defendants guilty of receiving a bribe in violation of federal law, and another guilty of conspiring to receive a bribe. The third defendant entered a guilty plea to receiving a bribe, while reserving the right to challenge the district court's jurisdiction on appeal. The so-called jurisdictional question raised by all three defendants is the first question we will take up.

I

The statute cited in the indictments sanctions any "public official" who—

> directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for (A) being influenced in the performance of any official act; . . . or (C) being induced to do or omit to do any act in violation of the official duty of such official or person.

18 U.S.C. § 201(b)(2)(A), (C). Enacted in 1962, the statute applied to District officials through the following language: "the term 'public official' means . . . an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia. . . ." 18 U.S.C. § 201(a)(1).

The defendants maintain that Congress's acquiescence in a bribery statute, enacted by the D.C. Council in 1982, effectively repealed § 201's applicability to Dis-

trict officials. The local bribery statute, introduced as part of the District of Columbia Theft and White Collar Crimes Act, D.C. Law 4–164, uses language similar to § 201(b) and applies only to public servants of the District of Columbia. *See* D.C.Code §§ 22–711(6), 22–712. Pursuant to the District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (the "Home Rule Act"), the mayor signed the bill including the new bribery provision, and the Council forwarded the statute for review by Congress. *See* D.C.Code § 1–233(c)(1) (procedures for review by Congress). The bill became law when Congress allowed the requisite time period to elapse without taking action.

Though retaining ultimate legislative authority over the District, Congress delegated certain specific legislative powers to the D.C. Council in the Home Rule Act. Among the explicit limitations on the Council is that the Council may not "enact any act, or enact any act to amend or repeal any Act of Congress, . . . which is not restricted in its application exclusively in or to the District." D.C. Code § 1–233(a)(3). The district court held that this limitation barred the Council from putting before Congress a provision that would repeal the local portion of a nationally-applicable statute such as § 201. We too agree that § 201 continues to apply to District officials, but for a different reason.

 Unless there is "clear and manifest" evidence that the 1982 local bribery provision repealed the relevant portion of § 201, the federal bribery statute stands as enacted. *Posadas v. National City Bank of N.Y.*, 296 U.S. 497, 504, 56 S.Ct. 349, 80 L.Ed. 351 (1936); *see Navegar, Inc. v. United States*, 192 F.3d 1050, 1063 n. 8 (D.C.Cir.1999); *United States v. Hansen*, 772 F.2d 940, 944 (D.C.Cir.1985). The fact that the D.C. law covers " 'some or even all of the cases provided for by [the prior act]' " is not a basis for finding a repeal. *Posadas*, 296 U.S. at 504, 56 S.Ct. 349 (quoting *Wood v. United States*, 41

U.S. (16 Pet.) 342, 362–63, 10 L.Ed. 987 (1842)). It is not uncommon for laws to be cumulative. Local criminal laws may cover the same offenses as federal criminal laws. "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

The local bribery statute and the federal statute are not irreconcilable. They are instead quite consistent. They both prohibit the same conduct by District employees; the only significant difference between them is that the maximum penalty for the federal offense is up to 15 years of imprisonment while the District offense carries a maximum of 10 years' imprisonment. The defendants therefore do not spend much time trying to convince us that the two statutes cannot stand together. They rely instead on a 1981 Senate committee report on a criminal code reform bill that was never enacted. *See* S. REP. No. 97–307, at 432 (1982). Among other things, the bill would have replaced 18 U.S.C. § 201(b) with a new provision that excluded District of Columbia public servants. The bill responded to the D.C. Council's concurrent efforts to revise the D.C. criminal code, including the enactment of the bribery provision now found in section 22–712. The defendants tell us that one of the D.C. Council's objectives in enacting its own bribery provision was "to consolidate and clarify" the District of Columbia criminal laws. Brief for Appellants at 26, quoting Report by D.C. Council's Committee on the Judiciary, June 1, 1982, Bill No. 4–133. This, the defendants say, amounts to "clear and manifest" evidence of an implied repeal.

We are unpersuaded. As far as the D.C. Council is concerned, we cannot find any intent to repeal: at the same time it sent the local bribery provision up to Congress, the Council sent up legislation expressly repealing fifty-eight other statutes—three of which appeared in the same chapter as the new bribery provisions. *See* Theft and White Collar Crimes Act of 1982, D.C. Law No. 4–164, § 602(a)-(fff), Act No.4–238. As far as Congress is concerned, a report by one Congressional committee on a bill that was never enacted counts for very little. If the question of repealing § 201 as it applied to District officials ever explicitly came before Congress there is no compelling reason why Congress would have chosen repeal. When Congress enacted another bribery provision in 1984, it explicitly covered District officials. *See* 18 U.S.C. § 666(d). Retaining § 201 as enacted might seem desirable to Congress, if only because this gives the United States Attorney the option of filing in either the local courts or the federal courts. That is an option the United States Attorney enjoys with respect to many offenses, particularly those dealing with drugs. *See United States v. Mills*, 964 F.2d 1186, 1188 (D.C.Cir.1992) (en banc). Federal court has sometimes been the venue of choice because federal sentences are higher. *See id.* Furthermore, the District's bribery provision became law not because Congress acted, but because Congress failed to act. Whether any member of the Senate or House paid attention to the question of repealing § 201 is impossible to know. Still less is there clear and manifest evidence that a majority of the members of both houses considered their inaction a vote for repeal.[1]

Because the statutes are not irreconcilable and there is no convincing evidence that the later act was intended as a substitute, we hold that a repeal by implication did not occur. *See Posadas*, 296 U.S. at 503, 56 S.Ct. 349.

---

1. Congress has amended § 201 twice since 1982, when the District's bribery statute took effect, but it never took the opportunity to exclude District officials from the statute's coverage. *See* Pub.L. No. 99–646, § 46(a)-(1), 100 Stat. 3592, 3601–04 (1986); Pub.L. No. 103–322, tit. XXXIII, §§ 330011(b), 330016(2)(D), 108 Stat. 1796, 2144, 2148 (1994).

## II

The jury found one of the defendants—Daryl Johnson—guilty of selling a motor vehicle inspection sticker, in violation of 18 U.S.C. § 201(b)(2). Johnson filed motions for a judgment of acquittal and a new trial, contending that there was insufficient evidence to convict him on the bribery charge either as a principal or as an aider and abettor, a contention he renews on appeal. The district court denied the motions.

■ Viewing the evidence most favorably to the government, as we must, *see United States v. Clark,* 184 F.3d 858, 863 (D.C.Cir.1999), leads to the conclusion that on November 6, 1997, while working as a vehicle inspector for the District, Johnson sold inspection sticker T217137 to Mohammed Dashtizadeh for approximately $70.00. Prem Randhawa, a taxicab driver, asked Kamal, a body shop repairman, to fix the grille on his cab so that it would pass inspection. Kamal told Randhawa that the grille could not be fixed but that he could arrange for a person known as Mr. Mo to pass inspection in Randhawa's cab. Randhawa went to see Mr. Mo and paid him $150.00 to take the car to be inspected. Mr. Mo later returned the cab to Randhawa with a sticker on it. The parties stipulated that government agents removed sticker T217137 from Randhawa's taxicab.

The middleman, Mohammed Dashtizadeh, testified about his role in the transaction. Dashtizadeh said that he knew of Randhawa and was able to identify him in court. When asked how they knew each other, Dashtizadeh recounted that his friend Kamal had phoned him regarding the grille on Randhawa's taxicab. Kamal sent Randhawa to Dashtizadeh to obtain an inspection sticker. Dashtizadeh testified that he sold a sticker to Randhawa for $150.00. The sticker, Dashtizadeh reported, must have come from either Johnson or Banks because those were the only two inspectors from whom he purchased stickers. (Dashtizadeh began purchasing inspection stickers in late 1997 and pur-chased a total of four or five stickers from Johnson.)

To establish the identity of the inspector who sold the sticker to Dashtizadeh, the government introduced the paperwork used during the inspection process. Johnson's initials on the sign-out log indicate that sticker T217137 was in his possession on the day the corresponding inspection card was printed for inspection of a taxicab. Johnson's custody of T217137 is further confirmed by the lane report for that day which lists him as the stickerman—the person who affixes the sticker to the windshield—and by his signature on the sticker inventory log. In addition, the government produced the inspection card for sticker T217137 which lists Brooks as the entrance booth inspector, co-defendant Depp as the lane inspector, and Johnson working the exit booth as the stickerman. While each of these records points to Johnson as having custody of sticker T217137, none of them even lists Banks.

■ Johnson views the evidence as insufficient to support the verdict because the government never established directly that he sold the sticker to Dashtizadeh. How, he asks, could the jury decide that he, rather than Banks, sold the sticker without direct proof? The answer is through circumstantial evidence. The sort of direct evidence Johnson thinks was needed was not needed. As the Supreme Court has said, "direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960); *see also United States v. Fadayini,* 28 F.3d 1236, 1239–40 (D.C.Cir.1994). Those who have tried criminal cases are familiar with this example of the power of circumstantial evidence: if you go to bed on a winter's night and the ground is clear and you wake up the next morning and see snow on the ground, you have circumstantial evidence that it snowed last night. The circumstan-

tial evidence here, while not that powerful, leads us to conclude that, with respect to Johnson, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is true that Dashtizadeh's testimony left open the possibility that Banks was the seller. But a rational juror could see this possibility as remote indeed in light of evidence we have discussed and, at all events, it is settled that the government's evidence need not "foreclose every conceivable premise inconsistent with guilt." *United States v. Carter*, 522 F.2d 666, 682 (D.C.Cir.1975).

### III

Defendants Ellis Williams and Leon Depp challenge the district court's calculation of the relevant conduct attributable to them for their roles in the bribery scheme. They complain that the court failed to make specific findings concerning when they joined the conspiracy and attributed bribe amounts to them that were not reasonably foreseeable in furtherance of jointly undertaken criminal activity. The district court held, and the government now argues, that Depp and Williams are responsible for all bribes taken after they began working at the inspection station, in 1991 and 1992 respectively.

Under the Sentencing Guidelines, bribery of a public official carries a base offense level of ten, which is increased when the offense involves multiple bribes or amounts more than $2,000. *See* U.S.S.G. § 2C1.1. When calculating the number and amount of bribes involved, the sentencing court may consider all relevant conduct attributable to the defendant. In the case of a jointly undertaken criminal activity, this includes any acts and omissions of others in furtherance of the jointly undertaken criminal activity that were reasonably foreseeable to the defendant. *See* U.S.S.G. § 1B1.3. Applying this standard, the district court held that Depp and Williams were accountable for the bribes taken by the other inspectors because those actions were both in furtherance of

jointly undertaken activity and reasonably foreseeable to them. Accordingly, the court held Williams responsible for payments totaling between $40,000 to $70,000 and Depp for payments between $70,000 to $120,000.

■ The court based its determination, which we review for clear error, *see United States v. Pinnick*, 47 F.3d 434, 437 (D.C.Cir.1995), on the assumption that Depp and Williams began participating in the bribery scheme as soon as they began working at the inspection station. Instead of identifying specific facts to establish that their involvement began at that time, the court relied on the fact that the "conspiracy ... started back in the '80s" and required the cooperation of other inspectors to make it work. With respect to Depp, the court found it significant that "there was never any indication that he was not involved from the beginning." From this, the court inferred—unreasonably, we think—that both must have joined the scheme quite soon after starting work at the station. That inference is without an evidentiary basis. For one thing, the record shows that not all of the inspectors at the inspection station were involved in the conspiracy. It is possible that Williams and Depp waited some time before opting to join in. The district court's conclusion was thus improper in the absence of particularized findings demonstrating that Williams and Depp joined the conspiracy soon after their employment began. *See United States v. Childress*, 58 F.3d 693, 722 (D.C.Cir.1995) (requiring that sentencing court make individualized findings on whether actions were reasonably foreseeable to defendant); *United States v. O'Campo*, 973 F.2d 1015, 1022–26 (1st Cir.1992) (finding that cocaine sales by coconspirators before defendant joined conspiracy were not "relevant conduct" for sentencing).

■ Nevertheless, as applied to Williams, the district court's erroneous determination is harmless. The court held Williams responsible for bribes taken as of

1992. Williams maintains the evidence established his involvement began no earlier than 1994. Even if Williams is correct, and we subtract the bribe amounts from 1992 to 1994, Williams is still accountable for more than $40,000. The district court relied on figures submitted by the probation officer and the government, both of whom put the total amount at more than $49,000. Eliminating bribes taken before 1994 only reduces the total amount by about $4,700. Had the district court included only bribes taken after Williams is known to have joined the scheme, the total would still have been more than $44,000. Because the district court's error made no difference to its relevant conduct determination, resentencing of Williams is unwarranted.

As to Depp, the error is not inconsequential. The district court used a conspiracy period from 1991 through the indictment in 1998. At the sentencing hearing, Depp disputed the length of this period, contending the evidence establishes his involvement only as of February 1996. Refusing to shorten the conspiracy period, the court held Depp responsible for bribes valued at the low end of the $70,000 to $120,000 range—calculating the total as $70,065 but conceding that the government's figure of $86,325 was largely credible. If we recalculate the amount without bribes taken from 1991 through 1995 the total figure is significantly reduced. The reduction for bribes provided by just one individual (Otoo) to Johnson alone, even crediting Depp's objections, amounts to at least $24,500. Given the potential for such a substantial reduction, a remand for a new assessment of Depp's relative conduct is necessary. In making that reassessment, the district court may rely on either of the two methods the government presented for calculating relevant conduct—the testimony of the inspectors' customers or the extrapolation from a sampling of illegal stickers. It may not, however, decide that Depp's participation in the scheme began at the same time as his employment without the support of particularized findings.

The case is remanded with respect to Leon Depp for resentencing. In all other respects, the judgment of the district court is affirmed.

*So ordered.*