In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-3644

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLARENCE HENDRIX,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 0757—**James B. Zagel**, *Judge.*

_____

ARGUED DECEMBER 1, 2006—DECIDED APRIL 9, 2007

_____

Before EASTERBROOK, *Chief Judge*, and RIPPLE and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* A jury convicted defendant Clarence Hendrix of one count of distributing at least fifty grams of crack cocaine. The conviction arose out of a drug transaction with a confidential informant. Hendrix appeals, arguing that the evidence was insufficient to support his conviction, that he was entitled to a missing witness jury instruction after the confidential informant failed to testify, that the government improperly used the confidential informant, and that his sentence is unreasonable based on a disparity between sentences for powder

and crack cocaine. We affirm Hendrix's conviction and sentence.

## I.

Clarence Hendrix's conviction for distributing crack cocaine stems from several encounters between Hendrix and a confidential informant, Isadore Gee. On April 30, 2002, agents from the Federal Bureau of Investigation provided Gee with money and a recording device. Gee then called Hendrix, but did not meet with him. The officers, however, recorded the telephone conversation, during which Gee requested "the same thing" from Hendrix. While "the same thing" remained unspecified, the government argued that "the same thing" covertly referred to a drug transaction. On May 2, 2002, the government again provided Gee with money and a recording device. Gee met with Hendrix, but they did not complete a transaction. A recording of the meeting demonstrated that Hendrix balked at completing the transaction because he spotted several "detective cars" conducting surveillance in the area.

One week later, on May 9, 2002, Gee again received money and a recording device. Officers then searched his car and person, assuring that no drugs or money were present, after which Gee proceeded to a neighborhood where he and the officers anticipated a transaction with Hendrix. Officers were in place to conduct surveillance near a house owned by Clarence Hendrix's mother, located at 623 Campbell, where the transaction was to take place. Gee parked his car near 623 Campbell, walked to the house, and entered. The recording indicated that Gee again asked Hendrix for the "same thing," and

Hendrix responded that he should "[c]ome back in about fifteen minutes." Complying with Hendrix's instructions, Gee left and went to his girlfriend's apartment, located about half a block away, just around the corner. Notably, Gee's detour to the apartment was not authorized or anticipated by the officers monitoring him, and it was contrary to guidelines for his cooperation. Gee remained inside the apartment and out of sight for about fifteen minutes.

Meanwhile, Hendrix exited 623 Campbell and briefly sat on a bench on the front porch. He then went across the street to his car, which he started and backed up. Gee, then returning from his girlfriend's apartment, approached the driver's window of Hendrix's car. The recording indicated that Hendrix stated to Gee, "[g]o look on my porch it's wrapped up in a napkin." Hendrix drove away as Gee went to the porch, where he sat down in the same spot where Hendrix had previously sat. An officer observed Gee place "something white" in his front pocket. After this incident, Gee once again returned to his girlfriend's apartment for about five minutes. He then exited and walked around the neighborhood before entering an undercover officer's vehicle. Gee gave the officer a white paper towel and a plastic bag containing a white, rock-like substance. A chemist later provided expert testimony that this substance was 53.7 grams of crack cocaine.

The parties expected Gee to testify at trial, and the prosecutor even previewed this to the jury in his opening statement. Gee showed up at the courthouse, but initially refused to testify. The court warned him that a subpoena remained in effect and he must appear the next day. The next day Gee arrived at the courthouse, apparently ready

to testify, but the government reported that it had learned from another source that Gee had "recently been using a lot of heroin." The government considered this "the last straw" and elected not to call him. The government offered Gee to the defense, stating that Gee was willing to speak with the defense and that "[i]f the defense wants him as a witness, he is theirs." The court took a recess to allow the defense to consult with Gee, but the defense decided after only a brief break that "it would serve us no purpose to interview Mr. Gee or call Mr. Gee as a witness." The district court then determined that, since Gee was available to the defense, the defense could not argue in closing that the government failed to present Gee as a witness; if the defense mentioned this, the court stated that the prosecutors were free to inform the jury that the defense could have called Gee. Neither party mentioned Gee's absence as a witness during closing arguments.

The jury convicted Hendrix of distributing a controlled substance on or about May 9, 2004, based on the above series of events. (The jury also acquitted Hendrix of distributing a controlled substance on or about August 8, 2004, a transaction which is not at issue.) After additional deliberations, the jury found that the substance was "at least fifty grams or more of cocaine base in the form of crack cocaine." After trial, Hendrix filed post-trial motions for a new trial and for a judgment of acquittal, which the district court denied. The district court sentenced Hendrix to 240 months of imprisonment, a mandatory minimum based on his prior felony drug conviction. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 851(a)(1). Hendrix appeals.

**II.**

On appeal, Hendrix first argues that the government presented insufficient evidence to support his conviction, and that the district court should have granted him a judgment of acquittal. We review de novo the district court's decision denying a motion of acquittal. *United States v. Jones*, 222 F.3d 349, 351 (7th Cir. 2000) (citation omitted). Hendrix bears "a heavy burden" in making this challenge. *United States v. Leahy*, 464 F.3d 773, 794 (7th Cir. 2006); *see also United States v. Romero*, 469 F.3d 1139, 1151 (7th Cir. 2006). This is because we must examine "the evidence and all reasonable inferences that can be drawn from it . . . in the light most favorable to the government." *United States v. Gardner*, 238 F.3d 878, 879 (7th Cir. 2001) (citations omitted). The evidence is insufficient "only if no rational trier of fact could have found guilt beyond a reasonable doubt." *Leahy*, 464 F.3d at 794 (citation omitted).

In this case, the government presented sufficient circumstantial evidence from which a rational juror could determine beyond a reasonable doubt that Hendrix distributed crack cocaine. The recorded conversations between Gee and Hendrix suggested that the two were arranging a transaction for a controlled substance. When at Hendrix's mother's house on the date of the alleged transaction, Hendrix instructed Gee to return to the house in fifteen minutes after Gee asked for the "same thing." In the interim, Hendrix sat on the porch and then went to his car. From his car, he then told Gee that it was on the porch "wrapped up in a napkin." Gee sat on the porch in the same place Hendrix sat, where officers observed him placing something white in his pocket. He later turned over a napkin and a bag of cocaine to the officers. While it is metaphysically possible that Gee obtained the crack

cocaine during the unauthorized trips into his girlfriend's apartment, Hendrix provides no evidence for this other than the fact that Gee was temporarily out of the officers' sight. The jury could very reasonably infer that Hendrix distributed the crack cocaine based on what the officers observed. *See United States v. Henderson*, 337 F.3d 914, 920 (7th Cir. 2003) ("[The defendant] chose the time and location for their meeting. [The informant] did not know prior to their telephone conversation that [the defendant] would choose to complete the drug deal at his place of employment. As a result, it is pure speculation to conclude that [the informant] could have planted the drugs prior to that day."); *see also United States v. Ytem*, 255 F.3d 394, 397 (7th Cir. 2001) ("*Anything* is possible; there are no metaphysical certainties accessible to human reason; but a merely metaphysical doubt (for example, doubt whether the external world is real, rather than being merely a dream) is not a reasonable doubt for purposes of the criminal law." (citations omitted)). The recorded conversations, the covert behavior, Hendrix's reference to a napkin, the observation of Gee retrieving something white from a location where Hendrix had recently sat, and the recovery of a napkin, when viewed together in the light most favorable to the government, support a reasonable inference that Hendrix distributed a controlled substance. Furthermore, the chemist and experienced officers provided sufficient evidence that the substance was crack cocaine. Hendrix points to authority requiring that the evidence support a "*confident* conclusion that the defendant is guilty beyond a reasonable doubt." *United States v. Morales*, 902 F.2d 604, 608 (7th Cir. 1990). We are confident that the circumstantial evidence is sufficient to support the jury's verdict beyond a reasonable doubt and

conclude that the conviction was supported by sufficient evidence. *See Leahy*, 464 F.3d at 796. Furthermore, and more important, the court amended the *Morales* decision to omit the "confident conclusion" language. *See United States v. Morales*, 910 F.2d 467, 467-68 (7th Cir. 1990).

Next, Hendrix argues that he was entitled to a new trial or a missing witness instruction because the government failed to call Gee as a witness.[1] As noted, the government anticipated calling Gee and represented this to the court and the jury, but elected not to do so after Gee initially balked at testifying and the government learned of his recent heroin use. Hendrix seems to argue that these circumstances and the government's breach of an alleged promise that Gee would testify are so unusual that the "interest of justice" requires a new trial. Fed. R. Crim. P. 33(a). The district court denied Hendrix's motion for a new trial, and we review that ruling for abuse of discretion. *United States v. Ogle*, 425 F.3d 471, 475 (7th Cir. 2005) (citation omitted).

The district court did not abuse its discretion in denying Hendrix a new trial based on Gee's failure to testify. It is understandable that the defense would prefer to cross-

---

[1] Hendrix also raises an argument under the Confrontation Clause of the Sixth Amendment in his reply brief. He concedes that he did not raise this issue in his opening brief, but argues that the issue should be considered because the government supplemented the record in the interim. Having reviewed the supplemental record, we find no reason that a Confrontation Clause challenge could not have been brought in the opening brief. We therefore consider this argument forfeited. *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1035 n.2 (7th Cir. 2005) (citing *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 665-66 (7th Cir. 1995)).

examine Gee as a government witness—and thereby draw out his convictions, his involvement with drugs, his unauthorized trips to his girlfriend's apartment during the transaction, and generally discredit the government's case. All of this, however, could have been accomplished by Hendrix's attorney on direct examination. Similarly, the defense had the opportunity to address Hendrix's contention that the recorded references to "the same thing" did not refer to drugs by eliciting this from Gee as a defense witness. Furthermore, contrary to Hendrix's assertions, the government's dealing with Gee does not require a new trial in the interest of justice. There is absolutely no indication of bad faith by the prosecutors; they expected Gee to testify, even requesting that the court admonish the reluctant Gee to appear. Only after new information surfaced regarding Gee's recent use of heroin did the government opt against calling Gee and instead tendered him to the defense. Gee was in the courthouse and available to speak with and testify for the defense. While the defense was understandably wary of presenting Gee as its witness, he was present and waiting in the event they chose to call him. The fact that the government did not call Gee under the circumstances did not require a new trial in the interest of justice. The district court, therefore, did not abuse its discretion in denying a new trial.

Further pursuing Gee's failure to testify, Hendrix suggests that he should have received the benefit of a missing witness instruction. Although Hendrix's counsel asked to argue to the jury about the missing witness, he did not request a missing witness instruction. We therefore review for plain error. *United States v. Tolliver*, 454 F.3d 660, 667 (7th Cir. 2006) (citation omitted). A missing witness instruction is warranted if "the absent witness was peculiarly within the government's power to produce; and [if]

the testimony would have elucidated issues in the case and would not merely have been cumulative." *United States v. Brock*, 417 F.3d 692, 699 (7th Cir. 2005) (citation and internal quotation omitted). In this case, Gee was available for the defense to call, and was therefore not "peculiarly within the government's power to produce." *Id.* Thus the defense did not meet the requirements for a missing witness instruction. *Id.* We discern no error, plain or otherwise, under the circumstances.

Hendrix also claims that the government may not use a confidential informant if the confidential informant cooperated to benefit another individual's sentence. Hendrix now suggests that the government's arrangement with Gee, which benefitted Gee's friend and drug supplier Robert McIntosh, violates due process. Since Hendrix failed to raise this argument before the district court, we review for plain error. *United States v. Mitov*, 460 F.3d 901, 907 (7th Cir. 2006) (citation omitted). To meet the plain error threshold, Hendrix "must demonstrate a manifest miscarriage of justice." *Id.* (citation omitted). Hendrix points to statutory authority that permits the government to compensate informants for their assistance. Because the statute does not also state that an informant's cooperation may benefit another, he argues that the government's arrangement was improper. *See* 18 U.S.C. § 3059B; 21 U.S.C. § 886(a). We have stated, however, that

> Judges are in no position to evaluate the government's need to offer monetary *or other inducements* to the criminals whom it hopes to enlist in the "war against drugs." . . . Our job . . . is to make sure that grossly unreliable evidence is not used to convict a defendant. We do this by requiring (in effect) that the inducements be disclosed to the jury, which can use its

common sense to screen out evidence that it finds to be wholly unreliable because of the inducements that the witness received.

*United States v. Dawson*, 425 F.3d 389, 395 (7th Cir. 2005) (citation omitted, emphasis added).

In this case, an officer testified that Gee's cooperation would benefit a friend of Gee who was charged with another crime. The officer also detailed Gee's own prior felonies. The jury therefore had information to assess Gee's reliability as a cooperating individual. In *Dawson*, we permitted an informant's testimony who received a twenty-percent bounty for money recovered from drug sales that was recovered through his assistance. *Id.* at 392. The dissent in *Dawson* warned against the dangers of cooperation agreements with "benefits made contingent upon subsequent indictments or convictions." *Id.* at 398 (internal quotation and citation omitted). The arrangement with Gee is distinguishable from the permitted arrangement in *Dawson* because the benefit to McIntosh was not contingent on Gee's testimony at trial or Hendrix's conviction, and Gee himself did not benefit financially from Hendrix's conviction. We do not find the circumstances in this case to risk the admission of "grossly unreliable evidence." *Id.* at 395. We further note that an arrangement in which a confidential informant's cooperation benefits a third party is not unique to this case. *See, e.g.*, *United States v. Ocampo*, 472 F.3d 964, 966 (7th Cir. 2007) ("Ocampo's girlfriend cooperated with the government in its investigation of Martinez by working as a confidential source in an effort to benefit Ocampo's case."). Under plain error review, we find no "manifest miscarriage of justice" in the government's use of Gee as an informant, even though his cooperation would benefit another person. Signifi-

cantly, the jury was informed of the arrangement and the arrangement was not contingent on Hendrix's conviction. *Mitov*, 460 F.3d at 907.

Finally, Gee argues that his sentence is unreasonable because of the disparity between sentences for powder versus crack cocaine. Hendrix conceded that he raises this argument merely to preserve it, since this court has already decided this issue. In *United States v. Miller*, 450 F.3d 270, 276 (7th Cir. 2006), this court held that "differences called for by § 841(b)(1)(B) and supported by the protocols that U.S.S.G. § 2D1.1 prescribes for comparing different weights and kinds of illegal drugs are not 'unwarranted.'" Since Congress and the Sentencing Commission were warranted in distinguishing between crack and powder cocaine, this distinction is not sufficient to render a sentence unreasonable. We follow *Miller*, and therefore this argument is without merit.

## III.

We conclude that the prosecution presented sufficient evidence to support Hendrix's conviction beyond a reasonable doubt, that Gee's failure to testify did not warrant a new trial or a missing witness instruction, and that there is no plain error in the government's arrangement with Gee as a confidential informant. We further conclude that Hendrix's sentence was not unreasonable. Accordingly, we AFFIRM both Hendrix's conviction and sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*