**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 10, 2010[*]
Decided February 11, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 08-4036

| | |
|---|---|
| UNITED STATES OF AMERICA , | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 CR 757 |
| CLARENCE HENDRIX, | |
| *Defendant-Appellant*. | James B. Zagel, *Judge*. |

**O R D E R**

Clarence Hendrix appeals from the denial of his motion for a new trial. We affirmed his conviction and sentence on a drug distribution charge, *United States v. Hendrix*, 482 F.3d 962, 966-67 (7th Cir. 2007), but he now contends that he is entitled to a new trial because he has discovered new information that he believes discredits both a government agent and a confidential informant and thus casts doubt on the integrity of the government's case. The

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

district court denied the motion after concluding that the evidence was neither newly discovered nor material to the jury's verdict. We affirm.

We upheld the judgment and sentence in a published opinion, *Id*. at 482 F.3d at 966-67, so we presume familiarity with the facts. As relevant here, Hendrix is in prison because he sold crack cocaine in 2002 to a confidential informant named Isadore Gee. The government captured the exchange on audio and video surveillance, and the recordings—supplemented by the observations of the investigating officers and recordings of two previous encounters between Gee and Hendrix—formed the basis for Hendrix's conviction.

At trial the government introduced a recording of the transaction. While listening to the recording at trial, FBI Special Agent Michael Culloton identified the voices of Hendrix and Gee; other voices he did not recognize. A transcript of the recording bore the initials of Culloton and Gee, and attributed the words "Go ahead" to someone named "James Lee," who turned out to be Hendrix's brother, James Lee Carr. Upon questioning by defense counsel, Culloton testified that Gee had identified Lee's voice in the recording. Gee, for various reasons, was never called to testify. The jury convicted Hendrix of crack distribution. He was sentenced to 20 years' imprisonment and we affirmed.

In 2007 Hendrix moved under Federal Rule of Criminal Procedure 33 for a new trial based on what he described as newly discovered evidence that his brother James Lee, who Gee claimed was present during the transaction, was in fact incarcerated. Hendrix argued that the government knew or should have known that Agent Colloton presented perjured testimony about James Lee, and that the inaccurate statement influenced the verdict by depriving the jury of material information about the credibility of Gee and Culloton. He appended to his motion a document from the Illinois Department of Corrections verifying that Lee was in prison until 2003—nearly a year after the controlled sale. The district court denied the motion as untimely, but we noted that the motion had been filed within three years after the verdict, and then vacated the judgment. *United States v. Hendrix*, 280 F.App'x. 540 (7th Cir. 2008).

On remand the district court denied the motion, explaining that the evidence that the voice on the recording was not James Lee was not newly discovered because Hendrix knew about it by the first day of trial. Further, the court noted that this was at worst an agent's mistake: Agent Culloton never vouched that James Lee was the man behind the door but merely repeated what he was told by Gee. In any event, Culloton's mistake was immaterial: the identity of the man who opened the door for the cooperating witness did not affect the strength of the government's case against Hendrix.

On appeal Hendrix renews his argument that his evidence was newly discovered and material. He thus contends that the district court abused its discretion by denying his motion for a new trial.

The parties disagree about the appropriate test to apply in evaluating a motion for new trial based on newly discovered evidence. Hendrix favors a test reserved by the Supreme Court for rare cases involving the known presentation by the government of perjured testimony. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). Under *Agurs*, a new trial is warranted where 1) the government presented perjured testimony; 2) the government knew or should have known of the perjury; and 3) there is some likelihood that the testimony could have affected the verdict. *See United States v. Ogle*, 425 F.3d 471, 476 (7th Cir. 2005) (citing *Agurs*, 427 U.S. at 103.) The government counters that the statement was neither perjurious nor offered with knowledge that it was false, and so encourages us to use the more stringent, four-part test for evaluating false testimony that was presented unintentionally. Under that test, a new trial is warranted if the false statement 1) came to light only after the trial; 2) could not have been discovered by the defendant sooner with reasonable effort; 3) was material; and 4) likely would have resulted in an acquittal had it not been introduced to the jury. *Ogle*, 425 F.3d at 476; *United States v. Mitrione*, 357 F.3d 712, 717-18 (7th Cir. 2004), *vacated on other grounds*, *Mitrione v. United States*, 543 U.S. 1097 (2005).

We need not choose between these slightly different tests because each requires finding that a witness's false testimony affected the jury's verdict. Here the weight of the evidence of Hendrix's guilt was so overwhelming that the jury would have convicted him with or without Culloton's testimony. The jury reached its verdict after watching a recording that looked and sounded like a drug deal. The government's case was circumstantial but still solid: the tapes indicated that after Gee asked Hendrix for the "same thing"—code, the government argued, for a specific quantity of drugs—Hendrix told Gee he could find what he was looking for wrapped in a napkin on the front porch. Gee proceeded to the porch, where he sat in the same place Hendrix had sat moments before, took something white off the bench, and placed it in his pocket. Gee later turned over to federal agents a paper towel containing more than 50 grams of crack.

Hendrix argues that evidence suggesting that Gee falsely identified James Lee would have discredited Gee as a confidential informant. He reasons that had the jury cause to discredit Gee, they may have been more likely to finger him rather than Hendrix as the source of the crack, particularly since Gee, while off camera, made unauthorized visits to his girlfriend's apartment. We rejected this argument on direct appeal; Gee, we acknowledged, might have obtained the crack during one of his off-camera visits, but the mere possibility

of this was too abstract to create a reasonable doubt that he bought the crack from Hendrix, especially in light of the overwhelming evidence suggesting otherwise. *Hendrix*, 482 F.3d at 966. A different identity attached to a voice on the recording adds nothing to disturb our earlier conclusion.

In light of our conclusion here, we need not reach Hendrix's remaining arguments.

AFFIRMED.