In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2758

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MINGQING XIAO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:21-cr-40039-SMY-1 — **Staci M. Yandle**, *Judge*.

ARGUED JUNE 21, 2023 — DECIDED AUGUST 8, 2023

Before SYKES, *Chief Judge*, and HAMILTON and BRENNAN,
*Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant-appellant Dr.
Mingqing Xiao has taught mathematics for many years at
Southern Illinois University—Carbondale. He has also done
academic work based in China, for which he has received
more than $100,000 in payments. An investigation of certain
grant applications by Dr. Xiao led FBI agents to take a deeper
look at his finances. He was ultimately charged with wire

fraud, making a false statement, failing to disclose his foreign
bank account on his income tax returns, and failing to file a
required report with the Department of the Treasury.

At trial, Dr. Xiao was acquitted of wire fraud and making
a false statement, but a jury found him guilty of filing false tax
returns and failing to file a report of a foreign bank account.
He has appealed, seeking reversal of those convictions. He ar-
gues that the evidence was insufficient, primarily on the ques-
tion of willfulness, that the tax return question was ambigu-
ous, and that the foreign-account reporting regulation is inva-
lid. We affirm. The government's evidence permitted the jury
to find beyond a reasonable doubt that Dr. Xiao acted will-
fully in choosing not to disclose his foreign bank account. The
key question on the tax return form was not ambiguous as
applied to Dr. Xiao's situation. He also has not shown that the
foreign-account reporting regulation is invalid.

I    *Legal, Factual, and Procedural Background*

   A.  *The Legal Duty to Disclose a Foreign Bank Account*

The Bank Secrecy Act requires many United States citizens
and residents to report financial relationships and transac-
tions with foreign banks. 31 U.S.C. § 5314(a). The Act's pur-
poses include tax compliance and more general law enforce-
ment, including civil investigations, criminal proceedings,
and counterterrorism efforts. 31 U.S.C. § 5311 (stating pur-
poses of Act). Under regulations adopted under the Act,
United States citizens and residents who have a "financial in-
terest in" or "signature or other authority over" a foreign
bank account or other financial account must report their ac-
counts to the federal government. 31 C.F.R. § 1010.350(a). A
taxpayer who meets the reporting criteria is required to

disclose the existence of the foreign bank account on an annual tax return. *Id*. And if such a taxpayer meets the reporting criteria as to foreign bank accounts collectively exceeding $10,000, that taxpayer is required to file a separate annual report of a foreign bank account. 31 C.F.R. §§ 1010.306(c) & 1010.350(a).

IRS Form 1040, Schedule B, asks whether the taxpayer has a foreign bank account:

> At any time during [the tax year], did you have a *financial interest in* or *signature authority over* a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions … .

(Emphases added.) Definitions are available in the instructions. If the answer is "yes"—that the taxpayer did have a "financial interest in" or "signature authority over" a foreign financial account—the tax form directs the taxpayer to instructions to determine whether it must be reported in a "Report of Foreign Bank and Financial Accounts," also known as an "FBAR." Willfully giving a false answer on a tax return is a criminal offense. 26 U.S.C. § 7206(1). So is willfully failing to file a required foreign bank account report. 31 U.S.C. §§ 5314 (duty to report) and 5322(a) (criminal penalty).

B. *Dr. Xiao's Case*

As part of an investigation into grant applications to the National Science Foundation for possible fraud, the Department of Justice investigated Dr. Xiao's finances, including his Chinese bank account and his tax returns. After the investigation, a federal grand jury indicted Dr. Xiao on seven counts: two counts of wire fraud by failing to disclose his outside

funding to the National Science Foundation, one count of making a false statement to Southern Illinois University, three counts of making a false statement on three years of income tax returns, and one count of failing to file a report of a foreign bank account. See 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1001(a)(1) (false statement); 26 U.S.C. § 7206(1) (false statement on tax return); 31 U.S.C. §§ 5314 & 5322 (failure to file reports of foreign bank and financial accounts).

The case was tried to a jury. Before the case was submitted to the jury, the judge granted Dr. Xiao's motion for judgment of acquittal on the wire fraud charges under Federal Rule of Criminal Procedure 29(a). On those charges, the district judge found sufficient evidence that Dr. Xiao intended to deceive but not that he intended to defraud. The jury acquitted Dr. Xiao on the charge of making a false statement. The jury convicted Dr. Xiao on the three charges of filing false tax returns and the one charge of not reporting a foreign bank account. He was sentenced to serve one year of probation and to pay a fine and costs totaling just under $2,400.

On appeal, Dr. Xiao contests the denial of his renewed motion for judgment of acquittal or for a new trial under Federal Rules of Criminal Procedure 29 and 33. His principal argument is that the evidence did not support findings beyond a reasonable doubt that he acted willfully in filing his false tax returns and failing to file a foreign bank account report. His arguments revolve around a single question on each tax return: did he have a "*financial interest in* or *signature authority over* a financial account … located in a foreign country?" He also argues that the question was fundamentally ambiguous and that the foreign bank account report regulation exceeds the statutory authority for issuing such regulations.

II. *Analysis*

We consider first the sufficiency of the evidence of willfulness. We then address Dr. Xiao's claim that the tax return question about foreign bank accounts is "fundamentally ambiguous" and then his challenge to the FBAR regulation.

A. *Sufficiency of the Evidence*

We will overturn a conviction for insufficient evidence only if, viewing the evidence in the light most favorable to the government, "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Snyder*, 71 F.4th 555, 571 (7th Cir. 2023), quoting *United States v. Maldonado*, 893 F.3d 480, 484 (7th Cir. 2018), quoting in turn *United States v. Brown*, 726 F.3d 993, 1005 (7th Cir. 2013). We have often said this is a high hurdle for defendants to clear, but it is not impossible. The "height of the hurdle depends directly on the strength of the government's evidence," for even a "properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Snyder*, 71 F.4th at 571, quoting *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir. 2019), quoting in turn *United States v. Garcia*, 919 F.3d 489, 496–97 (7th Cir. 2019); see generally *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).

The government's evidence—corroborated by Dr. Xiao's own statements in the interview with FBI agents—was easily sufficient to permit a finding beyond a reasonable doubt that Dr. Xiao answered the tax return question falsely and that he did so willfully. We summarize that evidence, giving the government the benefit of reasonable inferences from the evidence.

Since 2000, Dr. Xiao has taught mathematics at Southern Illinois University—Carbondale. He also worked with research colleagues in China, and that team received a grant of approximately $180,000. Dr. Xiao also received from one of those colleagues in China approximately $30,000 to critique papers, to edit manuscripts, and to help with English. Dr. Xiao also signed a contract to become a specially appointed professor at a university in China. By the contract's own terms, he would be paid for his "employment" in the form of an "annual salary," a "year-end performance" payment, and a home-purchase subsidy for "high-level talent."

Dr. Xiao opened a bank account with Ping An Bank in China to receive payments for his academic work in China. Accordingly, from at least 2017 to 2019, Dr. Xiao had a financial interest in, and signature authority over, a foreign bank account. But on his United States federal tax returns for those years, he answered "no," that he did not. Likewise, in 2019, he failed to file a foreign bank account report.

The evidence includes Dr. Xiao's foreign bank records, which documented his many transactions, including deposits, withdrawals, and investments. The records showed monthly deposits for "salary." They also showed his withdrawals to pay individuals, convenience stores, and mobile apps. The records further showed about $70,000 worth of investments, which Dr. Xiao hoped would produce a "stable increase of assets." His foreign bank records showed his transactions occurred during 2017, 2018, and 2019. In 2019, his foreign bank account had a balance in Chinese currency worth over $100,000, well beyond the reporting threshold of $10,000.

Dr. Xiao did not disclose this income or the account when he applied for research grants in the United States. He was

later asked to explain by Southern Illinois University officials. The reason, he explained to the university, was that he believed he did not have to disclose his "income from seminars, lectures, or teaching engagements sponsored by public or non-profit entities." But the real reason, he admitted to the FBI agents, was that he feared disclosing the extra source of money would have damaged his employment with the university.

Dr. Xiao likewise did not disclose his foreign bank account on his income tax returns, nor did he file a foreign bank account report. During his FBI interview, Dr. Xiao admitted that he had the Ping An bank account, that it was his bank account, and that it was in a foreign country. He admitted he opened his account under his own name. He admitted that his account had a balance worth over $100,000. All of this evidence was more than sufficient circumstantial evidence to support a finding that Dr. Xiao acted willfully, i.e., in deliberate violation of a known legal duty, when he kept answering "no" on his tax returns.

So what is the defense theory? Dr. Xiao also told the federal agents that he answered "no" each time on the tax return question about foreign bank accounts because he did not think the payments counted as his "own money." Based on his answers in the interview, his theory for not reporting the foreign bank account seemed to be that his use of the money was limited to paying expenses in China, so that he was not free to use the money as he wished and that it thus should somehow not count as his money. His appellate brief quotes a number of passages from his interview with the federal agents in which he suggested that the Chinese bank account

was not actually his money because it could be used only to cover his travel expenses.

A taxpayer's wrong and even unreasonable understanding of applicable tax law can defeat a prosecution for *willful* violations. *Cheek v. United States*, 498 U.S. 192, 201–02 (1991). Such a wrong or unreasonable understanding of applicable tax law often presents a question of fact for trial, as in *Cheek*, *id*. at 202–04, and in Dr. Xiao's case. The jury in this case was instructed properly on this standard, however, and it found beyond a reasonable doubt that Dr. Xiao had acted willfully.

The jury was not required to accept the paper-thin defense theory. Dr. Xiao did not testify to explain his understanding or withstand cross-examination. That was his right, of course, but it meant that the only evidence of his supposed understanding of the law was limited to his confusing and contradictory answers during the FBI interview. He admitted, for example, that his wife could use the money, that his children could use the money, and that no Chinese law he knew of prevented him from using the money. Moreover, his actions were not consistent with this defense theory, as shown, for example, by his using the money to invest to produce a "stable increase of assets."

The government also presented sufficient proof that Dr. Xiao was responsible for preparing, signing, and filing the tax returns. Dr. Xiao told the FBI agents he prepared his own tax returns, using privately purchased software. His tax returns show his same personal identification number and email address each year. His receipts for the privately purchased

software match his tax return's personally identifying information and show he submitted his returns to the IRS.[1]

This evidence thus supported a straightforward case of willfully filing tax returns with materially false statements. Dr. Xiao points out, however, that the privately purchased software he used did not actually use exactly the same question as the Form 1040. The software had a dialogue box titled "Other Interest and Dividends." It said: "These are other interest and dividend items that apply to very few people. Take a look at the list below, if any of these situations apply, check the box." The first option to check read: "Received income from *discounted loans* or had *foreign bank accounts or trusts* <u>Learn More</u>." The "Learn More" phrase was highlighted as a link to more detailed information. The second option concerned receiving interest payments from a seller-financed mortgage. The third and last option was "None of the above." The user was required to check at least one box.

One might imagine that a taxpayer in a hurry might see the note that these items "apply to very few people" and skip past the prompt about foreign bank accounts without paying attention. That might be negligent rather than willful. But Dr.

---

[1] Dr. Xiao argues on appeal that the government failed to prove beyond a reasonable doubt that he was the person who prepared, signed, and filed the false tax returns using privately purchased software products. In light of (a) his admissions summarized in this paragraph of the text, (b) the standard of review on sufficiency of the evidence, and (c) the absence of conflicting evidence, the argument is frivolous. It invites only baseless speculation. See generally *United States v. Ytem*, 255 F.3d 394, 395–96 (7th Cir. 2001) (affirming conviction in face of defendant's speculation about whether he actually mailed money obtained by fraud across state lines).

Xiao does not contend that is what happened. He told the FBI agents that he had answered the question each year. One might also imagine a theory that different wording between the IRS form and the privately purchased software confused the issue, but the software question was even simpler than the IRS question, and Dr. Xiao did not claim he did not understand the software's question.

As noted, a defendant who honestly misunderstood the requirements of tax law has a defense to a criminal charge of willful violations. *Cheek*, 498 U.S. at 201–02. In this case, given the evidence that Dr. Xiao's returns were actually false and that he answered the questions deliberately, his theory of an honest mistake presented a question of fact for the jury. *Id.* at 202–04. Given the weakness of the evidence showing an honest mistake and the extensive evidence inconsistent with that theory, the evidence was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Dr. Xiao acted willfully in failing to disclose his ownership of a foreign bank account in his tax returns.

B. *Fundamental Ambiguity?*

Dr. Xiao's appellate theory that perhaps he misunderstood the question for his tax return blends into a closely related argument, that the question is "fundamentally ambiguous," so that neither he nor anyone else could fairly be convicted for answering it falsely. We are not persuaded.

The starting premise of Dr. Xiao's argument is sound: if the government prosecutes a person for giving a false answer to a question, whether from a grand jury or the IRS, the question must have been clear to a reasonable person under the circumstances. As we said in an earlier tax case under 26

U.S.C. § 7206(1), "literal truth is a defense to perjury, even if the answer is highly misleading." *United States v. Reynolds*, 919 F.2d 435, 437 (7th Cir. 1990), citing *Bronston v. United States*, 409 U.S. 352 (1973); see also *United States v. Harris*, 942 F.2d 1125, 1127–28 (7th Cir. 1991) (reversing criminal tax convictions where law was unclear as to whether payments in question were gifts or taxable income).

Dr. Xiao invokes this principle by arguing on appeal that the phrases "financial interest in" and "signature authority over" are confusing and ambiguous to an ordinary taxpayer, even if they might be clear enough to lawyers, judges, and accountants. He points to the extensive definitions and instructions that surround this question. The privately purchased software he used offered a link to "learn more" about whether he "had foreign bank accounts." The Form 1040 directed taxpayers to instructions to determine whether they had a "financial interest in" or "signature authority over" a foreign financial account. The filing instructions define both terms. A United States person has a "financial interest in a foreign financial account" if he is "the owner of record or holder of legal title, regardless of whether the account is maintained … for the benefit of another person." FinCEN, *BSA Electronic Filing Requirements for Report of Foreign Bank and Financial Accounts (FinCEN Form 114)* at 5 ¶ 1 (Jan. 2017). A United States person has "signature authority over" a foreign financial account if he has "authority … (alone or in conjunction with another individual) to control the disposition of assets held in a foreign financial account … ." IRS, *2017 Instructions for Schedule B* at B-2 to B-3 (2017), https://www.irs.gov/pub/irs-prior/i1040sb--2017.pdf.

Missing from this defense theory is a plausible alternative meaning of the question that would make his "no" answers true. Dr. Xiao obviously had a "financial interest" in his foreign bank account. There was no evidence that anyone else had any interest in the account. Nor was there any evidence that anyone else had access to or control of the account. Dr. Xiao also had "signature authority over" his foreign bank account. He could "control the disposition of assets," as he regularly did with his own debit card tied to the account. He has not offered any plausible alternative meaning for the question on the tax return under which his answers of "no" could have been true.

Dr. Xiao shows no contrary regulations. Instead, the regulations clearly define his legal duty. 31 C.F.R. § 1010.350(e) (financial interest) and (f) (signature authority). Dr. Xiao points to no conflicting agency guidance. See, e.g., *United States v. Harra*, 985 F.3d 196, 204, 218 (3d Cir. 2021) (reversing false-statement conviction of bank official; government provided contradictory regulatory guidance for banks on definition of "past due"); *United States v. Critzer*, 498 F.2d 1160, 1160–62 (4th Cir. 1974) (reversing convictions for willful tax evasion; different government agencies provided contradictory regulatory guidance on key definition of "possessory interest" in land held in trust for Indian tribe that governed taxability of income).

Dr. Xiao did not testify or otherwise offer evidence of his understanding of the facts or his legal obligations, apart from the recording of the FBI interview with him, which the government entered into evidence. Even on appeal, Dr. Xiao has not offered an explanation of the question on the Form 1040 or the private software that would excuse his failure to report

his foreign bank account. Nor has he pointed to any relevant contradictions in the guidance from different government agencies.

Dr. Xiao's lawyers argue the forms, instructions, and regulations are all just too dense and complicated to be fairly enforced by criminal law. We disagree. The statute, regulations, and guidance on reporting foreign bank accounts are certainly detailed. They have been written to apply broadly and to prohibit evasion by clever lawyering and complex structuring of foreign banking relationships. We can imagine other cases where more complex facts might leave room for stronger arguments for ambiguity as applied. Laws are not unconstitutionally indefinite, however, solely because of difficulty in "determining whether certain marginal offenses fall within their language." *Parker v. Levy*, 417 U.S. 733, 757 (1974), quoting *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963); accord, *Jordan v. De George*, 341 U.S. 223, 231 (1951); *Trustees of Indiana University v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019) ("a core of meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions at the statutory margin").

Notwithstanding any possible limits on the use of the money in Dr. Xiao's Chinese account (and there is no actual evidence of such limits), Dr. Xiao's case is quite straightforward. It lies within the "core of meaning," not at the edge of any regulations or definitions. He owned the foreign bank account, and his records show several years of his deposits, withdrawals, and investments. Whatever else the provisions might mean in "peripheral cases," the definitions and instructions made it plain that Dr. Xiao had a legal duty to answer the question "yes." See *De George*, 341 U.S. at 232.

C.  *Failure to File a Report of Foreign Bank Account*

Dr. Xiao raises distinct arguments challenging his conviction for willfully failing to file a foreign bank account report for 2019, in violation of 31 U.S.C. § 5314. He first argues that the government simply failed to offer sufficient evidence that his failure to file was willful. During the FBI interview, the audio of which was in evidence, Dr. Xiao admitted that he knew about the filing requirement when he filed his 2019 taxes. He had also filed his tax returns which, for several years, had prompted him to report foreign bank accounts. And of course he knew of his foreign bank account and its balance, so the evidence was sufficient to permit the jury to find beyond a reasonable doubt that Dr. Xiao knew of his legal duty to file a report and that he willfully chose not to file it.

He also raises a legal challenge to the regulations. He argues that the statute criminalizing his conduct authorizes regulations to punish only failures to report "transactions" with foreign banks, not the broader category of "relationships" with foreign banks. From this premise, he contends that the evidence was insufficient to convict him of willfully failing to file a foreign bank account report because the evidence did not show he failed to report transactions.

This argument fails both legally and factually. (We elect to bypass the government's argument that Dr. Xiao also waived the argument by failing to raise it at the proper time in the district court.) The argument fails legally because the statute authorizes the Secretary of the Treasury to require a United States person to file a report when that person "makes a *transaction* or maintains a *relation* for any person with a foreign financial agency." 31 U.S.C. § 5314(a) (emphases added). The regulation is nearly identical, requiring a person having a

"financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to "report such *relationship*." 31 C.F.R. § 1010.350(a) (emphasis added). Likewise, the regulations define "transaction" to include deposits, withdrawals, and investments, and Dr. Xiao carried out all of these sorts of transactions. 31 C.F.R. § 1010.100(bbb).

Dr. Xiao argues that the regulation improperly extends the duty beyond the statute's authority. He asserts that the statutory phrase "maintains a relation for any person" implies a relationship for a person other than the reporting person. If that were correct, the argument continues, the regulation requires a person to report his own foreign banking relationships and thus reaches beyond the permissible scope of the statute, and hence is void either as applied in general to "relationships" with foreign banks or as applied to Dr. Xiao, or at the very least requires the government to prove he engaged in a transaction that would have triggered the legitimate portion of the regulation.

We reject the reading of the statute. We see no difference between a foreign-bank relation and a foreign-bank relationship. The phrase "for any person" certainly includes the owner of the bank account. The phrase also is not surplusage. It makes crystal clear to those who might try to evade the reporting requirement that it also applies to persons who act as agents (disclosed or not) for others (subject to exceptions that do not arguably apply to Dr. Xiao). Accordingly, the regulation that Dr. Xiao violated is valid and enforceable.

Dr. Xiao's argument also fails as a matter of fact because in any event the government proved beyond a reasonable doubt that he engaged in reportable transactions. In 2019 he

received deposits to the Chinese account, made withdrawals from the Chinese account, and made investments using his Chinese account.

The judgment of the district court is AFFIRMED.