

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2006

# USA v. Vega

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2389

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Vega" (2006). *2006 Decisions.* Paper 884.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/884

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2389
_____

UNITED STATES OF AMERICA

v.

PEDRO VEGA,

Appellant

_____

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas
(D.C. No. 03-cr-00040-3)
District Judge:  Honorable Stanley S. Brotman

_____

Argued May 9, 2006
Before:  FISHER, COWEN and ROTH,[*] *Circuit Judges*.

(Filed June 19, 2006)

Darwin K. Carr (Argued)
P.O. Box 1723
Christiansted, St. Croix
USVI  00821
        *Attorney for Appellant*

_____

[*]The Honorable Jane R. Roth assumed senior status on May 31, 2006.

Kim L. Chisholm
Office of United States Attorney
United States Courthouse, Suite 260
5500 Veterans Building
Charlotte Amalie, St. Thomas
USVI  00802-6924
        *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Pedro Vega, an official of the United States Customs Service, was convicted by a jury of conspiracy, wire fraud, document fraud, bribery, obstruction of justice, and unlawful transportation of an alien.  He was sentenced to a term of imprisonment within the range prescribed by the United States Sentencing Guidelines based, in part, on judicial findings of fact made by a preponderance of the evidence.  He now appeals from the judgment of conviction and sentence, claiming that the evidence was insufficient to support the convictions, that the prosecution charged only a single conspiracy but proved two, and that the facts supporting his sentence should have been proven beyond a reasonable doubt.  We will affirm.

I.

Because the background of this case is fully recounted in our opinion in the related case of *United States v. Veras do los Santos*, No. 05-3387 (3d Cir. 2006), we will offer in

this discussion only a brief summary of the facts, emphasizing those that are most relevant to Mr. Vega's appeal.

A.

The alleged conspiracy in this case was manifested in two distinct schemes. In the first, Mr. Vega conspired with his girlfriend, Ignacia Veras de los Santos, and her brother, Agustin Veras de los Santos, to provide a fraudulent passport stamp reflecting legal immigration status to one Jose Agustin Reyes Hilario. Mr. Hilario gave his passport and a substantial cash payment to Mr. Veras, who forwarded it through Ms. Veras to Mr. Vega. Mr. Vega affixed a stamp to the passport and returned it to Mr. Hilario. Mr. Vega then ushered Mr. Hilario through the customs process and onto a plane bound for Puerto Rico. Unfortunately for the conspirators, Mr. Hilario was arrested soon after he landed.

In the second scheme, Mr. Vega conspired with two acquaintances, Victor Rodriguez and Ana Senieda Lora, to provide an I-94 – a document reflecting legal immigration status – to one Altagracia Ramirez. Mr. Ramirez offered a substantial cash payment to Mr. Rodriguez and Ms. Lora in exchange for Mr. Vega's assistance in securing a blank I-94. Ms. Lora helped Ms. Ramirez to complete the document, and Mr. Vega made arrangements to shepard Ms. Ramirez through the customs process.

However, the trip was cancelled when Mr. Vega became concerned over a possible law enforcement investigation. Ms. Lora was arrested shortly thereafter. She sought advice from Mr. Vega, who told her – in a telephone conversation recorded by police – to

3

"fall on her ass with nothing." An agent of the Department of Homeland Security testified that this phrase meant that she should not cooperate with authorities.

## B.

An indictment against Ms. Veras, Mr. Veras, and Mr. Vega was filed in the District Court of the Virgin Islands. It charged them with conspiracy in violation of 18 U.S.C. § 371, wire fraud in violation of 18 U.S.C. § 1343, document fraud in violation of 18 U.S.C. § 1546, and bribery in violation of 18 U.S.C. § 201. It also charged Mr. Vega individually with illegal transportation of aliens in violation of 18 U.S.C. § 1324 and obstruction of justice in violation of 18 U.S.C. § 1512.[1]

Trial commenced on August 24, 2004. Mr. Hilario and Ms. Ramirez recounted their encounters with Mr. Vega and the other conspirators, and Ms. Lora confirmed that she had conspired with Mr. Vega to obtain the I-94. Mr. Hilario's mother, who had

---

[1]Counts one through three of the indictment charged Ms. Veras, Mr. Veras, and Mr. Veras with wire fraud arising from the scheme to provide a fraudulent passport stamp; count four charged Ms. Veras, Mr. Veras, and Mr. Vega with conspiracy arising from the scheme to provide a fraudulent passport stamp; count five charged Ms. Veras, Mr. Veras, and Mr. Vega with document fraud arising from the scheme to provide a fraudulent passport stamp; count six charged Ms. Veras, Mr. Veras, and Mr. Vega with bribery arising from the scheme to provide a fraudulent passport stamp; count seven charged Mr. Vega with bribery arising from the scheme to provide a fraudulent I-94; counts eight and nine charged Mr. Vega with obstruction of justice arising from the scheme to provide a fraudulent I-94; count ten charged Mr. Vega with document fraud arising from the scheme to provide a fraudulent I-94; count eleven charged Mr. Vega with illegal transportation of aliens arising from the scheme to provide a fraudulent I-94; and counts twelve through fourteen charged Mr. Vega with wire fraud arising from the scheme to provide a fraudulent I-94.

4

provided the money for her son to obtain the passport stamp, testified that Ms. Veras and Mr. Vega had personally returned a portion of the fee to her after Mr. Hilario's arrest. Several witnesses from telephone companies stated that calls made by and to Mr. Vega, allegedly in furtherance of the schemes, were routed across territorial boundaries.

The jury returned a verdict of guilty on all counts on September 8, 2004. A post-trial motion for judgment of acquittal was denied by the District Court.[2]

A sentencing hearing for Mr. Vega was held in April 2005. The District Court adopted the presentence report and, over objection by defense counsel, found by a preponderance of the evidence that Mr. Vega had held a "high-level decision-making" position when he committed the offenses, resulting in an eight-level enhancement in the recommended sentencing range under the United States Sentencing Guidelines. *See* U.S. Sentencing Guidelines § 2C1.7(b)(1) (2002). It then imposed a term of imprisonment of forty-three months, within the Guidelines range and well within the statutory maximum twenty-year term of imprisonment. *See* 18 U.S.C. § 1343.

This timely appeal followed. An appeal by Mr. Veras was resolved in *United States v. Veras de los Santos*, 163 Fed. Appx. 132 (3d Cir. 2006), and we address the appeal by Ms. Veras in a separate opinion issued today, *see United States v. Veras do los Santos*, No. 05-3387 (3d Cir. 2006).

---

[2]The District Court did, however, grant one part of the motion. It held that the record was inadequate to support Mr. Vega's conviction of document fraud under count ten of the indictment, relating to the scheme to provide Ms. Ramirez with a false I-94.

II.

Mr. Vega raises several challenges to the judgment of conviction and sentence. Foremost, he argues that the evidence was insufficient to establish the elements of the crimes with which he was charged. He also argues that the prosecution created an impermissible variance by proving two conspiracies when only one was alleged in the indictment and that the District Court erred in sentencing him based on facts not proved beyond a reasonable doubt. These issues will be addressed in turn.

A.

Mr. Vega was convicted of multiple offenses: one count of conspiracy, six counts of wire fraud, one count of document fraud, two counts of bribery, two counts of obstruction of justice, and one count of unlawful transportation of an alien. He now challenges the sufficiency of the record as to each.

1.

A criminal conspiracy, in violation of 18 U.S.C. § 371, is established by proof that "two or more persons conspire[d] . . . to commit any offense against the United States . . . and [that] one or more of such persons d[id] any act to effect the object of the conspiracy." *Id.* We have interpreted this provision to encompass three elements: (1) an agreement between two or more persons to commit a federal crime, (2) knowledge of the purpose of the conspiracy and a deliberate decision to join in that purpose, and

6

(3) commission of an "overt act" by one of the participants in furtherance of the conspiracy. *United States v. Conley*, 37 F.3d 970, 976-77 (3d Cir. 1994).

These elements are satisfied in this case. As discussed in greater detail in the related appeal by Ms. Veras, *see Veras de los Santos*, No. 05-3387, slip op. at 11-13, the circumstances surrounding the scheme to obtain a passport stamp for Mr. Hilario give rise to an inference that the participants understood that the stamp was fraudulent. *See United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) ("The elements of conspiracy . . . can be proven entirely by circumstantial evidence."). The transaction took place at a private residence, involved an alien who was in the country illegally, was conducted for a large sum of money, and required the personal intervention of a government official outside normal channels. These facts reasonably demonstrate that the conspirators knew that the product of their efforts, the passport stamp, was unlawful and yet took steps to achieve that goal. *See id.* ("[W]e do not view the government's evidence in isolation, but rather, in conjunction and as a whole."); *see also United States v. Ytem*, 255 F.3d 394, 396-97 (7th Cir. 2001). The conviction of conspiracy under count four of the indictment will be upheld.

2.

Wire fraud is defined under 18 U.S.C. § 1343 as the use of interstate communications in furtherance of a "scheme or artifice to defraud." *Id.* To sustain a conviction for wire fraud, the record must show that the defendant (1) knowingly and

willfully participated in a scheme or artifice to defraud, (2) possessed a specific intent to defraud, and (3) used wire communications in interstate commerce, or reasonably foresaw that such wires would be used, in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).

The record satisfies these elements. The two plots in which Mr. Vega participated required him to disregard his official duties and assist illegal aliens to obtain fraudulent travel documentation. *See Veras de los Santos*, No. 05-3387, slip op. at 14. These acts deprived the public of its "intangible right to honest service" and constituted "scheme[s] or artifice[s] to defraud." *See* 18 U.S.C. § 1346. And, because these schemes were facilitated by telephone communications routed outside of the Virgin Islands,[3] they support the convictions for wire fraud under counts one, two, three, twelve, thirteen, and fourteen of the indictment.

3.

Production or possession of fraudulent immigration papers is defined as a federal offense under 18 U.S.C. § 1546. That section provides that "[w]hoever knowingly forges, counterfeits, alters, or falsely makes any . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United

---

[3]That Mr. Vega did not reasonably foresee the interstate nature of these communications is irrelevant to this analysis, for the reasons explained in the related appeal of Ms. Veras. *See Veras de los Santos*, No. 05-3387, slip op. at 14-17.

8

States, or . . . possesses . . . any such . . . document[,] . . . knowing it to be . . . procured by fraud or unlawfully obtained" is guilty of a crime. *Id.* § 1546(a).

The record supports a finding that Mr. Vega knowingly produced a passport with a fraudulent passport stamp. Despite the lack of direct evidence on the point, the government offered a substantial quantum of circumstantial proof suggesting that the document was false. *See United States v. Singh*, 222 F.3d 6, 9-10 (1st Cir. 2000) (noting that circumstantial evidence may suffice to demonstrate forgery in document). The stamp was obtained under extremely suspicious circumstances, outside of normal channels, and for a large sum of money. It was provided to an alien who had entered the country illegally. Mr. Hilario was instructed to depart the territory at a particular time, wearing particular clothes, and in the presence of a particular official, Mr. Vega. He was allowed to board the plane with Mr. Vega's intervention, but was not allowed to travel elsewhere in the United States using the passport. And, soon after Mr. Hilario was arrested, Ms. Veras and Mr. Vega spoke personally with Mr. Hilario's mother – in a private setting – and returned a substantial portion of the fee that they had taken. It may be inferred from these facts that the document was fraudulent and that Mr. Vega was involved in its production and distribution. *See Veras de los Santos*, No. 05-3387, slip op. at 18-19. Mr. Vega's conviction of document fraud under count five of the indictment will be upheld.

4.

Federal law prohibits the giving or accepting of money to influence official actions. A "public official" commits the offense of bribery under 18 U.S.C. § 201(b) when he or she "corruptly . . . accepts . . . anything of value personally or for any other person . . . in return for . . . being influenced in the performance of any official act[,] . . . being influenced to commit or aid in committing . . . any fraud . . . on the United States[,] or . . . being induced to do or omit to do any act in violation of the official duty of such official." *Id.*

Mr. Vega was charged with two counts of bribery: count six related to the scheme to provide a false passport stamp; count seven related to the scheme to provide a false I-94.

The record is sufficient to support the conviction under count six. Mr. Hilario testified that he paid a substantial sum of money to Mr. Veras and Ms. Veras on the understanding that Mr. Vega would provide a passport stamp.[4] The passport was later returned to him, with a stamp affixed, and Mr. Vega personally assisted him through the customs process. After Mr. Hilario was arrested, Mr. Vega visited Mr. Hilario's mother

---

[4]Defense counsel suggests obliquely that we may not rely on Mr. Hilario's testimony without independent corroboration. This argument is meritless. Independent corroboration is not generally required to support admission of a witness's testimony; rather, it is required, in limited circumstances under the corpus delicti doctrine, only when the witness is also a defendant. *See Government of Virgin Islands v. Harris*, 938 F.2d 401, 409 & n.6 (3d Cir. 1991). Mr. Hilario is not a defendant in this case, and independent corroboration of his testimony was unnecessary.

and returned some of the money to her. A reasonable juror could infer from these circumstances that Mr. Vega received a bribe in exchange for securing a fraudulent passport stamp.[5]

A closer question is presented with respect to count seven. Testimony at trial suggested that a blank I-94, of the type forwarded to Ms. Ramirez, is available at any commercial airline counter, meaning that Mr. Vega's act of sending the form to Ms. Ramirez did not violate any legal duty. Moreover, defense counsel asserts that there is insufficient evidence to establish that Mr. Vega was paid for assisting in the scheme.

These arguments do not cast doubt on the conviction. It is immaterial that a blank I-94 may be obtained at any airline counter. Although these documents may be procured at other locations, they cannot be used to travel within the United States unless they have been approved by a customs official. Mr. Vega not only assisted Ms. Ramirez in securing the document; he also agreed to usher her through the customs process when she was preparing to leave. Although this plan was never carried to fruition, due to Mr. Vega's subsequent arrest, it is clear that he promised to perform the act. This promise, even without actual performance, is sufficient to sustain a conviction for bribery. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (holding that conviction under 18 U.S.C. § 201(b) requires proof of an exchange of money in return for a promise

_____

[5]There is no doubt that Mr. Vega, as a customs supervisor, was a "public official" under the statute. *See* 18 U.S.C. § 201(a)(1) ("[T]he term 'public official' means . . . [an] employee . . . [of any] . . . agency or branch of Government . . . .").

of an official act); *cf. Osborn v. United States*, 385 U.S. 323, 333 (1966) (rejecting factual impossibility as a defense to charge of endeavoring to bribe a juror), *cited with approval in United States v. Aguilar*, 515 U.S. 593, 610-11 (1995).

The record also permits an inference that Mr. Vega received payments in exchange for this promise. Ms. Lora testified that Mr. Vega had told her during a previous transaction that it would cost $1,500 to assist an illegal alien in exiting the country. It may reasonably be assumed that the same practice was followed during the transaction involving Ms. Ramirez, particularly in light of Ms. Lora's testimony that she received the same amount of money – $1,500 – from Ms. Ramirez to secure the I-94 and passage into the United States. This evidence provides an adequate basis on which the jury could infer that Mr. Vega received the money in exchange for his assistance in the scheme.

The evidence was sufficient to prove that Mr. Vega accepted bribes for participating in the illegal schemes to obtain a fraudulent passport stamp and a false I-94. The convictions under counts six and seven will be sustained.

### 5.

The federal witness tampering statute makes it unlawful for any person to "corruptly persuade[ ] another person . . . with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 703-06

12

(2005). We held in *United States v. Farrell*, 126 F.3d 484 (3d Cir. 1997), that, to be "corrupt," the persuasion at issue must be accompanied by inappropriate coercive enticement or tainted by other illegality. *Id.* at 487-90. It is not enough that the defendant merely advises a coconspirator to exercise his or her constitutional right to remain silent, even if the defendant acts with the "improper purpose" of hindering a pending criminal investigation. *Id.* The defendant must go beyond simple advocacy of a lawful course of action and either exert some form of wrongful coercive pressure, such as offering a bribe or employing misrepresentations, or request that the person engage in illegal conduct. *Id.*

Mr. Vega was charged with two counts of witness tampering: count eight alleged that he had "instruct[ed another] person to destroy all evidence of a fraudulent I-94 from law enforcement detection"; count nine alleged that he had "instruct[ed another] person to withhold information from law enforcement."

The record supports the conviction under count eight. Testimony at trial indicated that, following the arrest of Ms. Ramirez and Ms. Lora, Mr. Vega instructed Ms. Ramirez to "break" the "document[]." This statement could reasonably be construed as advising Ms. Ramirez to destroy the I-94 that she had received from Mr. Vega. This document was relevant to a pending criminal investigation, and its destruction would have violated federal law. *See*, *e.g.*, 18 U.S.C. § 1519 (prohibiting destruction of records in federal investigations). Therefore, Mr. Vega's advice could be deemed "corrupt" persuasion for purposes of 18 U.S.C. § 1512(b)(3). *See Farrell*, 126 F.3d at 487-90.

13

Defense counsel protests that the advice to Ms. Ramirez was "noncoercive." This is unavailing. *Farrell* did not base its definition of "corrupt" solely on whether the conduct at issue was coercive or noncoercive. *See* 126 F.3d at 487-90. Rather, it recognized that noncoercive statements may constitute corrupt persuasion if they advocate illegal behavior. *Id.*; *see United States v. Davis*, 183 F.3d 231, 250 (3d Cir.) (holding that defendant's noncoercive suggestion to kill a witness constituted corrupt persuasion under 18 U.S.C. § 1512(b)(3)), *amended by* 197 F.3d 662 (3d Cir. 1999); *see also United States v. Khatami*, 280 F.3d 907, 912-13 (9th Cir. 2002) (stating that "[o]ther circuits . . . have . . . concluded that § 1512(b) encompasses non-coercive attempts to tamper with witnesses" and citing, among others, *Farrell* and *Davis*). Mr. Vega's statement, even if "noncoercive," advised Ms. Ramirez to take unlawful action and is therefore properly considered corrupt persuasion. The conviction under count eight will be upheld.

The record also supports the conviction under count nine, based on Mr. Vega's advice to Ms. Lora to "fall on her ass with nothing." We believe that this phrase could be interpreted to advocate illegal action. It plausibly suggests that Ms. Lora should not only refrain from speaking with investigators, but should destroy or withhold any incriminating evidence. Indeed, in light of Mr. Vega's explicit advice to Ms. Ramirez to "break" the I-94, the jury could reasonably conclude that Mr. Vega was similarly urging Ms. Lora to eliminate or conceal any records or materials that inculpated her and Mr. Vega. These actions would have violated federal law, *see, e.g.*, 18 U.S.C. § 1519, and thus Mr. Vega's

14

statement constitutes "corrupt persuasion" under 18 U.S.C. § 1512(b)(3). The conviction under count nine will be upheld.

6.

Section 1324(a)(1)(A)(ii) of Title 8 of the United States Code criminalizes an attempt to transport an illegal alien within the United States:

> Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States . . . in furtherance of such violation of law . . . [is guilty of unlawful transportation of an alien.]

8 U.S.C. § 1324(a)(1)(A)(ii). To sustain a conviction under this section, the government must prove that (1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law. *See United States v. Williams*, 132 F.3d 1055, 1059 (5th Cir. 1998); *United States v. Parmelee*, 42 F.3d 387, 391 & n.5 (7th Cir. 1994); *see also United States v. Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999).

The record is more than sufficient to support the conclusion that Mr. Vega knowingly attempted to transport Ms. Ramirez illegally through the United States.[6] Ms.

---

[6]For reasons that are not clear, Mr. Vega was not charged with unlawful transportation of an alien with respect to the scheme to assist Mr. Hilario.

Ramirez testified that she was here unlawfully, and Ms. Lora confirmed that Ms. Ramirez had sought assistance to obtain a fraudulent I-94. Mr. Vega had previously agreed to help illegal aliens to travel within the United States, and had reason to know from Ms. Lora that Ms. Ramirez was in the country illegally. He nevertheless made arrangements to provide Ms. Ramirez with an I-94 and to usher her through the customs process to ensure that she could travel into the United States. The conviction for transportation of an illegal alien will be upheld.

B.

Mr. Vega next argues that the government created an impermissible "variance" by proving two conspiracies when only one was alleged. The prosecution is not permitted to allege a single conspiracy in an indictment and then offer evidence of multiple, independently operating conspiracies at trial. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see also United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002). Such a variance between the pleadings and the proof betrays a misjoinder of defendants and carries the possibility that an individual who is not involved in the larger scheme will nevertheless be convicted thereof. *Kotteakos*, 328 U.S. at 765-74, *cited in United States v. Lane*, 474 U.S. 438, 446-47 (1986). A defendant who can establish both a variance and substantial prejudice arising therefrom is entitled to relief from conviction. *United States v. Padilla*, 982 F.2d 110, 114-16 (3d Cir. 1992).

16

We need not determine whether a variance occurred in this case because, even if established, it did not prejudice Mr. Vega. There was no chance that the jury would impute the guilt of an unaffiliated conspirator to Mr. Vega or unfairly convict him of a conspiracy in which he was not involved,[7] for the reason that Mr. Vega was undoubtedly involved in both of the schemes in this case. No matter whether the government proved one or two conspiracies, Mr. Vega was criminally responsible for each and evidence relating to each was fully admissible against him. The alleged variance in this case could not have resulted in an imputation of guilt that was not otherwise warranted or the introduction of damaging evidence that was not otherwise admissible. *See*, *e.g.*, *United States v. Ghant*, 339 F.3d 660, 664 (8th Cir. 2003) ("[The] 'prejudicial spillover effect' from one conspiracy to another[,] . . . if the defendant is a member of both conspiracies[,] . . . is minimal, if not nonexistent.") (quoting *United States v. Scott*, 511 F.2d 15, 20 (8th Cir. 1975)). The challenge to the judgment of conviction on this ground will be rejected.

## C.

Mr. Vega also argues that the District Court erred under *United States v. Booker*, 543 U.S. 220 (2005), in finding facts relevant to the United States Sentencing Guidelines by a preponderance of the evidence, rather than beyond a reasonable doubt. This

---

[7]*See Kotteakos*, 328 U.S. at 774 (warning of "[t]he dangers of transference of guilt from one to another across the line separating conspiracies").

17

objection may be quickly rejected. We stated in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), and confirmed in *United States v. Grier*, No. 05-1698, 2006 WL 1530009 (3d Cir. June 6, 2006), that these facts "do not implicate the constitutional right to proof beyond a reasonable doubt." *Id.* at *1, 6-7 (citing *Cooper*, 437 F.3d at 330). The District Court did not err in making these findings by a preponderance of the evidence, *see id.* at *8-9, and Mr. Vega suffered no infringement of his rights under the Fifth and Sixth Amendments, as construed in *Booker*. His challenge to the sentence on these grounds will be rejected.[8]

### III.

The proceedings in this case were constitutionally adequate. The evidence presented at trial supported the convictions of conspiracy, wire fraud, document fraud, bribery, obstruction of justice, and unlawful transportation of an alien. The alleged variance could not have prejudiced Mr. Vega since he was involved in both conspiracies and was not at risk of an unfair imputation of guilt by association. The facts properly found by the District Court by a preponderance of the evidence supported enhancements for obstruction of justice, multiple bribes, and abuse of a high-level position.

For these reasons, the judgment of the District Court will be affirmed.

---

[8]Mr. Vega does not challenge the reasonableness of his sentence.