**DELVIN DELANO DUGGINS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0024

Supreme Court of the Virgin Islands

February 27, 2012

297

LEONARD B. FRANCIS, JR., ESQ., St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., AAG, Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 27, 2012)

CABRET, *Associate Justice.* Delvin Delano Duggins was convicted, following a jury trial, of one count of making fraudulent claims upon the government in violation of title 14, section 843(3) of the Virgin Islands Code. Duggins appeals his conviction, asserting the following four claims of error: (1) the Superior Court committed reversible error by failing to give a jury instruction on specific intent, (2) there was insufficient evidence to convict him under § 843(3) because the People failed to introduce any false document into evidence, (3) the People offered evidence of a conspiracy that caused a variance from the charges alleged in the Information and (4) the prosecutor committed reversible prosecutorial misconduct by asking particular questions of a key witness. For the reasons that follow, we affirm Duggins's conviction.

## I. FACTS AND PROCEDURAL HISTORY

On January 12, 2010, the People charged Duggins with a three count Amended Information, including charges for attempted filing or recording forged instruments, 14 V.I.C. §§ 331(2), 795; making fraudulent claims upon the government, 14 V.I.C. § 843(3); and attempting to make fraudulent claims upon the government, 14 V.I.C. §§ 331(2), 843(3). At trial, the People produced evidence that Duggins, while employed as a supervisor at the Bureau of Motor Vehicles on St. Thomas, requested that a subordinate employee remove a lien from his vehicle while knowing that the lien was valid. Based on this evidence, the jury found Duggins guilty of making fraudulent claims upon the government, but acquitted him of both attempt charges. On March 3, 2010, the trial court entered its Judgment, imposing a one year sentence upon Duggins, all of which it suspended except thirty days, six months probation, a five hundred dollar

fine and costs and fees. On March 17, 2010, Duggins filed a timely notice of appeal.[1]

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a).

The standard of review for our examination of the Superior Court's application of law is plenary. *See Estate of Ludington v. Jaber*, 54 V.I. 678, 681 (V.I. 2010) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). We review a trial court's refusal to give specific jury instructions for an abuse of discretion. *Gilbert v. People*, 52 V.I. 350, 354 (V.I. 2009). However, when we consider challenges to the sufficiency of the evidence, "we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People." *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009) (internal quotation marks and citation omitted). *See Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). Therefore, " '[w]e will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Smith*, 51 V.I. at 398 (quoting *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007)). *See also Latalladi*, 51 V.I. at 145.

Finally, because Duggins failed to object at trial to the conspiracy evidence he alleges caused a variance from the charges set forth in the Information or to the questions he identifies as prosecutorial misconduct, we will only review those claims for plain error. *See Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). To warrant relief for plain error, this Court must find (1) an error, (2) that is plain, and (3) that affected substantial rights. *Id.* If we determine the error meets those requirements, we may grant relief in our discretion if (4) we find from the record that the error affects the " 'fairness, integrity, or public reputation of judicial

---

[1] At the time Duggins initiated this appeal, Supreme Court Rule 5(b) required that "[i]n a criminal case, a defendant shall file the notice of appeal in the Superior Court within fourteen days after the entry of . . . the judgment or order appealed from . . . ." However, Rule 5(b) has recently been amended to extend this time to thirty days.

proceedings.' " *Id.* (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

## III. DISCUSSION

### A. The Superior Court did not abuse its discretion by failing to give the specific intent instruction requested by Duggins

Duggins first argues that the Superior Court erred by refusing to give a specific intent instruction to the jury. The People, in turn, argue that there is no mens rea requirement for section 843(3) at all, insisting that "[t]he government only had to prove that Appellant made [the statement] and [that] the statement was false." (Appellee Br. 11.) At a sidebar conference on the issue, the trial judge determined that Duggins must "knowingly" have made the false statement and instructed the jury in accordance with his decision. (*See* J.A. 527 (requiring the government to prove "that the Defendant directed a data entry clerk at the Department of Motor Vehicles to remove a lien from his vehicle registration although he was aware that the vehicle had a valid lien.")); *see also* BLACK'S LAW DICTIONARY 950 (9th ed. 2009) (defining knowing as "[h]aving or showing awareness or understanding").

■■ First, the People's assertion that section 843(3) has no mens rea requirement is without merit. As long ago as 1970, the Third Circuit, relying on 14 V.I.C. § 14, determined that when a crime in the Virgin Islands Code lacks an explicit mens rea requirement, the Legislature likely intended the standard to be that the accused acted "knowingly." *See Gov't of the V.I. v. Rodriguez*, 423 F.2d 9, 12-14, 7 V.I. 456 & nn. 4-17 (3d Cir. 1970). Furthermore, criminal statutes that lack mens rea requirements, frequently called strict liability criminal statutes, are generally reserved for public welfare offenses or statutory sexual crimes. *See id.* at 12-13 & nn. 12-13; *see also Gov't of the V.I. v. Richards*, 44 V.I. 47, 51 (V.I. Super. Ct. 2001). Finally, the other subsections of section 843, which are all more specific than subsection 3,[2] each have a "knowingly"

---

[2] Section 843 of title 14 states that

 [w]hoever?

 (1) makes or presents any claim upon or against the government of the Virgin Islands or any officer, department, board, commission, or other agency thereof, knowing such claim to be false, fictitious or fraudulent;

mens rea requirement. Since section 843(3) is the most general of any of section 843's subsections and can be read to include any act that falls within either subsection (1) or (4), an interpretation that section 843(3) has no mens rea requirement would make the "knowing" requirement of sections 843(1) and (4) mere surplusage — the People could charge and prove section 843(3) without ever proving the "knowing" requirement of sections 843(1) or (4). When interpreting statutes, we must read the statute, to the extent possible, so that no one part makes any other portion ineffective. *See Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (noting that "this Court must presume that '[w]hen the legislature adopts a law . . . it intended the entire statute to be effective.' " (quoting *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995))). Therefore, the fundamental issue before this Court is whether section 843(3) requires, as the trial court below instructed, only a mens rea of "knowing" conduct by the accused or whether the requirement is the higher specific intent requirement as Duggins argues on appeal.

 We recognize an argument for construction of the statute to require a mens rea comparable to that which the common law requires for fraud, which would import into section 843(3) a requirement that the People prove the defendant's specific intent.[3] In the absence of controlling authority, we often turn to the common law to aid in our interpretation. *See* 1 V.I.C. § 4 ("The rules of the common law . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."); *see also Robles v.*

---

(2) knowingly and willfully falsifies, conceals, or covers up by any trick, scheme or device a material fact;

(3) makes any false or fraudulent statements or representations; or

(4) makes or uses any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition knowing the same to contain any fraudulent or fictitious statement or entry —

in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands, shall be fined not more than $500 or imprisoned not more than two years, or both.

[3] Specific intent is generally defined as "[t]he intent to accomplish the precise criminal act that one is later charged with." *See* BLACK'S LAW DICTIONARY 882 (9th ed. 2009). This is in contrast to a standard of culpability for knowing conduct, which only requires that the defendant commit the act with an awareness of what he is doing. *See People v. Clarke*, 55 V.I. 473, 479 (V.I. 2011) (juxtaposing the concepts of knowledge and specific intent for aiding and abetting liability (citing *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999))).

*HOVENSA, L.L.C.*, 49 V.I. 491, 498-99 (V.I. 2008) (holding that 1 V.I.C. § 4 is " 'impressive evidence that the Virgin Islands legislature intends [majority] rule to govern in the absence of specific legislation.' " (quoting *Dyndul v. Dyndul*, 541 F.2d 132, 134, 13 V.I. 376 (3d Cir. 1976))); *Gov't of the V.I. v. Williams*, 424 F.2d 526, 527, 7 V.I. 493 (3d Cir. 1970) (discussing the statutory offense of larceny under 14 V.I.C. § 1081, which also lacked an explicitly stated mens rea requirement, the court stated that "[i]n these circumstances, the process of interpretation begins with the consideration that . . . specific intent . . . is an essential element of the crime of larceny at common law."). At common law, fraud required proof of specific intent. *See Gov't of the V.I. v. Adams-Tutein*, 47 V.I. 514, 522-23 (D.V.I. App. Div. 2005). Additionally, in *Bowry v. People of the Virgin Islands*, 52 V.I. 264, 268-69 (V.I. 2009), we required proof of specific intent for a sufficiency challenge to a conviction under 14 V.I.C. § 834(2),[4] which criminalizes obtaining money by false pretenses. In setting out that requirement, we quoted extensively from the Appellate Division's per curiam opinion in *Government of the Virgin Islands v. Adams-Tutein*, where the court noted that section 834(2), like section 843(3), "does not define false or fraudulent representations" and, turning to the common law, held that "a person 'defrauds' another if he makes 'a misrepresentation of an existing material fact, knowing it to be false, . . . *intending* one to rely' " on the misrepresentation.[5] 47 V.I. at 522 (emphasis added) (quoting BLACK'S LAW DICTIONARY 423 (6th ed. 1990)). Therefore, here, where this subsection of the statute is silent as to

---

[4] "Whoever knowingly and designedly, by false or fraudulent representations or pretenses, defrauds any other person of money or property shall — (1) if such property or money was less than $100 in value, be fined not more than $200 or imprisoned not more than 1 year, or both; or (2) if such property or money was $100 or more in value, be imprisoned not more than 10 years." 14 V.I.C. § 834.

[5] We note, of course, that *Bowry* and *Adams-Tutein* do not control our decision today because of the language of section 834. Unlike section 843(3), which is silent as to the mens rea requirement, section 834, which both *Bowry* and *Adams-Tutein* dealt with, imposes criminal liability on whoever "knowingly and *designedly*" defrauds another. Designedly is a clear indication that specific intent is required. *See State v. Pickus*, 63 S.D. 209, 257 N.W. 284, 293 (S.D. 1934) ("The continuance of the word 'designedly' in our criminal false pretense statute renders it clear beyond possibility of question that scienter or specific intent is (as it always has been) of the essence of the crime.").

the mens rea requirement, Duggins urges us to return to the common law requirement for mens rea.[6]

 However, for the reasons discussed below, section 843(3) must be construed to require a mens rea of "knowing" conduct, which in the present context means that the People needed only to prove that Duggins knew that the statement he made to the government was false. First, we note that in two recent cases, both of which were handed down after the briefing and argument in this case were completed, we described the scienter requirement for section 843(3) as knowingly making the false representation. *See DeSilvia v. People*, 55 V.I. 859, 869 (V.I. 2011); *Mendoza v. People*, 55 V.I. 660, 671 (V.I. 2011). Additionally, it is axiomatic that where we can determine the intent of the Legislature in enacting a statute, we are required to read the statute to carry out that legislative intent. *See* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, *Sutherland Statutes and Statutory Construction* § 45:5, at 28-29 (7th ed. 2007) ("An overwhelming majority of judicial opinions considering statutory issues are written in the context of legislative intent. The reason for this lies in an assumption that an obligation to construe statutes so that they carry out the will, real or attributed, of the lawmaking branch of the government is mandated by principles of separation of powers."); *id.* at 31-34 ("Legislative purpose and intent when obvious must be carried out irrespective of rules and interpretation as the intention of the lawmaker is the law."). All of the other three subsections to section 843 specifically

---

[6] Duggins also cites to *Government of the V.I. v. Williams*, 424 F.2d 526, 7 V.I. 493 (3d Cir. 1970) and *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994) for the proposition that 14 V.I.C. § 843(3) must be read in tandem with the provisions now codified in 18 U.S.C. § 1001(a), which requires both a "knowing and willful" mens rea. (Appellant Br. 11.) However, *Williams* deals with the larceny statutes of the Virgin Islands Code, rather than false representations to the government, and does not indicate that a Virgin Islands court is required to import mens rea requirements from the federal code to the territorial one. *Williams*, 424 F.2d at 526-27. Indeed, the opinion does not even cite to a federal statute, instead dealing only with the larceny statutes in the Virgin Islands Code. *Id. Curran*, on the other hand, deals solely with a conviction under the federal misrepresentations to the government statute, now 18 U.S.C. § 1001(a), and never mentions the Virgin Islands Code, nor its scienter requirements. *Curran*, 20 F.3d at 566-70. This is not surprising, as Curran was convicted in the Eastern District of Pennsylvania of requiring his employees to submit false documents to the federal government concerning election contributions to candidates seeking both elected federal positions and elected positions in the Commonwealth of Pennsylvania. *Id.* at 562-63. Thus, since neither opinion has anything to do with section 843(3), we decline Duggins's invitation to rewrite section 843(3) with the scienter requirements from 18 U.S.C. § 1001(a).

invoke a mens rea requirement of knowing conduct or statements. We are convinced, therefore, that in section 843 the Legislature intended to make knowing false statements — in more common parlance, lies — to the government a crime. Given the structure and context of the statute, we find no basis for indulging the assumption that the Legislature decided to vary from this concept of the required scienter under section 843 by its mere silence without some affirmative indication of that intention. *See id.* at 35 ("[I]n the search for legislative intent, courts look to the objective to be attained, the nature of the subject matter and the contextual setting. The statute is construed as a whole with reference to the system of which it is part."). Finally, we agree with the Third Circuit that where the Legislature leaves out a specific mens rea requirement, 14 V.I.C. § 14 is evidence of a legislative intent that the correct mens rea requirement is that the defendant knowingly acted. *Rodriguez*, 423 F.2d at 12-14; *see also Richards*, 44 V.I. at 51 (noting that, in general, "where a statute codifying a common law crime is silent as to intent, it is proper to look to the general provision [at] 14 V.I.C. § 14" but holding, *id.* at 52-55, that the legislative intent for statutory rape was clear that it should be a strict liability crime).

■ Therefore, because we find that the scienter requirement for 14 V.I.C. § 843(3) is that a defendant must "knowingly" make a false or fraudulent statement or representation, the Superior Court made no error when it instructed the jury in accordance with that doctrine. *Accord DeSilvia*, 55 V.I. at 869; *Mendoza*, 55 V.I. at 675-76.

### B. The requirement, codified in 14 V.I.C. § 844, that false pretenses must be proven by a "false token or writing" does not apply to prosecutions under 14 V.I.C. § 843(3)

The jury convicted Duggins under section 843(3) of title 14 of the Virgin Islands Code, under which it is a crime to make "any false or fraudulent statements or representations . . . in any matter within the jurisdiction of any . . . agency of the government of the Virgin Islands." Duggins argues that section 844 of title 14 requires that section 843(3)'s fraudulent statements or representations must be proven at trial by entering a false token or writing into evidence. Section 844 states that

[u]pon a trial for having, by any false pretense, obtained —

(1) the signature of any person to any written instrument; or

305

(2) from any person any valuable thing —

no evidence shall be admitted of a false pretense expressed orally and unaccompanied by a false token or writing . . . .

14 V.I.C. § 844. Duggins asserts that false or fraudulent statements or representations as prohibited under section 843(3) are simply a subset of the category of false pretenses set out at section 844, and thus the government failed to provide sufficient evidence to convict him because it did not put into evidence any false writing or token, as contemplated in section 844.[7] (*See* Appellant Br. 10.)

██ Recently, in *Miller v. People*, 54 V.I. 398 (V.I. 2010), this Court was faced with the question of what statute of limitations should apply to prosecutions brought under section 843(3).[8] To answer that question, we were required to determine the elements of a violation of section 843(3), and we found that "[w]hile section 843(3) requires, as an element, the making of a false statement or representation, the plain language of that section does not require that the making of a false statement or misrepresentation be in writing, much less that it be made in a public record." 54 V.I. at 403. Duggins's argument that we reconsider this language in light of section 844 does not persuade us to reach a contrary result here.

The interpretation of section 844, and how its provisions relate to the application of the rest of chapter 41 of title 14, styled "Fraud and False Statements," is one of first impression. Section 844 was included in the Virgin Islands Code when it became effective in 1957 and has not been amended since. Additionally, the section was a part of each island's 1921 Code prior to the enactment of the Virgin Islands Code. *See* 14 V.I.C. § 844 (source note). Despite that fact, our research disclosed that it has never been cited to or quoted by any court of the Virgin Islands.

---

[7] Duggins does not argue that the evidence was insufficient on any other element of the crime. *See United States v. Andino*, 627 F.3d 41, 49 (2d Cir. 2010) (reviewing the sufficiency of the evidence only as to elements of the crime that the defendant challenged).

[8] Specifically, we had to determine whether section 843(3) criminalized the falsification of a public record in order to determine whether a prosecution under section 843(3) had no statute of limitations as set out in 5 V.I.C. § 3541(a)(1) or a three year statute of limitations as set out at 5 V.I.C. § 3541(a)(2). *Miller*, 54 V.I. at 403. *Compare* 5 V.I.C. § 3541(a)(1) (stating that there is no statute of limitations for, among other things, murder, sex offenses, and falsification of public records); *with* 5 V.I.C. § 3541(a)(2) (stating that for all other felonies not listed in section 3541(a)(1), the statute of limitations is three years).

■■ However, the plain language of section 844 does not apply to prosecutions under section 843(3). Section 844 requires that the false pretense either obtain (1) a signature *from a person* or (2) a thing of value *from a person* before the pretense must be proved by a false writing or token. Thus, in order for section 844 to apply to section 843(3) prosecutions, the Government of the Virgin Islands must be a person. "Person" is defined for the purposes of the Virgin Islands Code at title 1, section 41 as "corporations, companies, associations, joint stock companies, partnerships and societies, as well as individuals." The Government of the Virgin Islands is not a corporation,[9] company,[10] association,[11] joint stock company,[12] partnership,[13] society,[14] or individual;[15] and consequently is not a person under section 41.[16] Therefore, because the Government of the Virgin Islands is not a "person" under section 41 of title 1, the requirement of a false token or writing imposed by title 14, section 844 cannot be engrafted onto section 843(3).

---

[9] "An entity (usu. a business) having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely . . . ." BLACK'S LAW DICTIONARY 391 (9th ed. 2009).

[10] "A corporation — or, less commonly, an association, partnership, or union — that carries on a commercial or industrial enterprise." BLACK'S LAW DICTIONARY 318 (9th ed. 2009).

[11] "An unincorporated organization that is not a legal entity separate from the persons who compose it." BLACK'S LAW DICTIONARY 141 (9th ed. 2009).

[12] "An unincorporated association of individuals possessing common capital, the capital being contributed by the members and divided into shares, of which each member possesses a number of shares proportionate to the member's investment." BLACK'S LAW DICTIONARY 319 (9th ed. 2009).

[13] "A voluntary association of two or more persons who jointly own and carry on a business for profit." BLACK'S LAW DICTIONARY 1230 (9th ed. 2009).

[14] "An association or company of persons (usu. unincorporated) united by mutual consent, to deliberate, determine, and act jointly for a common purpose." BLACK'S LAW DICTIONARY 1518 (9th ed. 2009).

[15] "Of or relating to a single person or thing, as opposed to a group." BLACK'S LAW DICTIONARY 843 (9th ed. 2009).

[16] *See People v. Miller*, 53 V.I. 162, 172 (V.I. Super. Ct. 2010) ("[T]he Government is not a person for purposes of [having] due process [protections]."). *See also* 33 V.I.C § 3408(a) (stating that "the Government of the Virgin Islands hereby waives its immunity from liability" making it liable for wrongful acts as "if [it were] a private person"); 16 V.I.C. § 341(e) (separately identifying income sources (payers) as persons, private entities and the "territorial government"); 33 V.I.C. § 2305 (distinguishing foreclosure by "private persons" from foreclosure by the Government).

Accordingly, the evidence against Duggins was not rendered insufficient by the People's failure to introduce a false writing or token at trial.

## C. The People did not introduce evidence which created an impermissible variance from the charges alleged in the information

 ██ Duggins, in his third argument, asserts that the People presented evidence that some of his co-workers and friends, who also happened to be defense witnesses, may have assisted or conspired with him in his crime, and thus created a risk that the jury would find Duggins guilty of a conspiracy that was not charged in the Information. Specifically, Duggins objects to the testimony of Myrna George, another employee of the Bureau of Motor Vehicles, who conducted the agency's internal investigation into the allegations that Duggins had ordered a subordinate employee to remove the lien from his car, and who testified that Duggins and another defense witness, Gregory Christian, were friends and thus in a "conspiracy" to hide the truth about Duggins's actions. First, we note that Duggins's counsel actually solicited all of this evidence himself from one of the People's witnesses.[17] Thus, because

---

[17] Defense counsel elicited this testimony twice from Ms. George, the first time the following colloquy took place:

Duggins's Counsel: Now, did you by chance at one point mention to Mr. Christian or suggest to Mr. Browne [the Director of the Bureau of Motor Vehicles] that you were fearful that Mr. Christian would coverup this examination that he did because of Mr. Duggins?
Ms. George: No. What I told both Director Browne and Mr. Christian, I don't use the word "fearful", I said I was concern [sic] that there may be a conspiracy of some sort and I am not going to be a partof it.

(J.A. 162.) At another point defense counsel elicited substantially the same sort of testimony from Ms. George a second time:

Duggins's Counsel: Now, in view of what Mr. Christian had explained to you, what new or additional information that you had that cause [sic] you to proceed further with this matter involving Mr. Duggins?
Ms. George: Don't tell me you cannot find his vehicle in the vehicle registration system when I can pull it up, and turn my monitor to you, and show you that it can be found. That's when I had the problem with the information or lack of information being given to me. As I said before, I became concern [sic] that a conspiracy might have been at birth [sic]. I am not going to be a part of that.
. . .
Duggins's Counsel: When you say, Miss George, "conspiracy", give us an understanding on what you mean. Was that conspiracy involving Mr. Duggins?

Duggins's counsel invited the error by eliciting the testimony in the first place, Duggins has waived any argument based on that evidence. *See Latalladi*, 51 V.I. at 143-44; *United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993) (" 'A defendant cannot complain on appeal of alleged errors invited or induced by himself . . . .' " (quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975))).

■■ Even if we were to review Duggins's argument for plain error as forfeited, rather than waived, we have no trouble determining that the trial court did not commit any error here. *See Johnson v. United States*, 520 U.S. 461, 465-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (forfeited errors subject to plain error review in appeals of criminal convictions). To support his variance argument, Duggins cites to a string of cases dealing with situations where the government alleges an all-encompassing large conspiracy, but proof at trial shows only a series of smaller conspiracies. Under the cases cited by Duggins, the government must restrict itself to the proof of the actual conspiracy that the defendant is alleged to have engaged in. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946); *United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002); *see also United States v. Vega*, 184 Fed. Appx. 236, 244 (3d Cir. 2006) (unpublished). *See generally* 16 AM. JUR. 2D *Conspiracy* § 11 (2010) (discussing how the court tells the difference between one large conspiracy and several smaller conspiracies which may have overlapping actors). Under this aspect of the doctrines flowing from *Kotteakos*, if a court finds that the government has charged a single, large conspiracy, but only offered proof at trial that the defendant was actually part of a smaller discrete conspiracy to which

---

Ms. George: It was involving his vehicle. I asked for the information, this is an investigation, internal investigation, it did not go outside the Bureau of Motor Vehicles at that time. I did not call in Investigator — Detective Griffith at that time. I was still doing an internal investigation. I requested the information as the assistant director back in April to be — to give you a little additional information, in the presence of all of the supervisors of the Bureau, that Director Browne gave a verbal directive, no investigations should be done other than through Miss George. So I was within my limits of doing such.

I investigated. I was not satisfied with the investigation — with the results that Mr. Christian gave me, so I took it to my superior in the presence of Mr. Christian. I didn't want to speak behind back and, no, no, no. I had both of them come into my office, and tell them I was uneasy with the results, and, therefore, I needed to find out what can be done about that.

(J.A. 185-86.)

proof of other conduct is not relevant, a defendant may be prejudiced if the jury hears evidence of actions by others who are not involved in the conspiracy in which defendant is shown to have engaged. *See, e.g., United States v. Padilla*, 982 F.2d 110, 114-16 (3d Cir. 1992). However, in the present case Duggins was neither charged with nor convicted of conspiracy. No evidence was introduced by the People, or admitted by the court, in an effort to prove Duggins's involvement in a conspiracy. Furthermore, no alleged co-conspirator admissions were admitted or used against Duggins. Therefore, we find it hard to imagine, and Duggins makes no effort to explain, how *Kotteakos* and its progeny apply to this case. Accordingly, we hold that the Superior Court did not commit any error in this regard, much less plain error.

## D. The People did not commit prosecutorial misconduct, and thus the Superior Court did not commit plain error.

Based on the same testimony from Ms. George mentioning the word "conspiracy," Duggins advances a fourth and final argument — that the People improperly elicited this prejudicial testimony from a prosecution witness without any basis to reasonably believe that its questions would yield admissible evidence, and therefore committed misconduct. As noted above, however, the government did not elicit this testimony from Ms. George. Instead, the testimony was elicited by Duggins's own counsel on cross-examination of Ms. George, and Duggins's counsel failed to object to or move to strike that testimony. Therefore, because Duggins's counsel elicited the testimony of which he now complains, the People could not have committed misconduct by its presentation, and in allowing the testimony the Superior Court committed no error at all, plain or otherwise.

▮ Here, however, unlike the discussion *supra* at Section III.C., the fact that the defense elicited the testimony is not the end of our analysis, as it is possible for a prosecutor to commit misconduct by failing to correct the perjured testimony of one of its witnesses. *See United States v. Stadtmauer*, 620 F.3d 238, 267 (3d Cir. 2010). Because Duggins failed to raise these perjury allegations to the trial court, our review is limited to determining whether receipt of this proof amounted to plain error. To successfully assert that the People committed misconduct by failing to correct Ms. George's testimony, Duggins must show that (1) Ms. George committed perjury, (2) the People knew or should have known that her

testimony was perjurious, and (3) there is a reasonable likelihood that the false testimony could have affected the verdict. *See id.*

■ First, Duggins fails to show that Ms. George committed perjury. "A witness commits perjury if he or she 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.' " *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993)). In his brief, Duggins argues that Ms. George's testimony that her boss did not feel that Duggins and Mr. Christian were close enough to question the propriety of Mr. Christian's involvement in Ms. George's investigation indicates that Ms. George's personal testimony about Duggins and Mr. Christian's relationship is "a fact that the People knew was not truthful." (Appellant Br. 14.) However, all that testimony shows is that there was a disagreement between Ms. George and her boss about the closeness of the relationship between Duggins and Mr. Christian; it does not establish that Ms. George's testimony about that relationship was false. *See Stadtmauer*, 620 F.3d at 268 ("[O]ther than the inconsistencies between the FBI agent's notes and [the witness'] recollection of his statements, there was no other evidence that [the witness] perjured himself.").

■ Even if we were to assume that Ms. George committed perjury, Duggins also fails to show that the People knew or should have known that Ms. George was testifying falsely. Duggins has not presented this Court with any reason to believe that the People had any independent knowledge of the veracity of Ms. George's statements, aside from what was set out above. *See United States v. Harris*, 498 F.2d 1164, 1168-69 (3d Cir. 1974) (the prosecutor's obligation to correct arises "where the Government knows that the witness is intentionally committing perjury" or "when it should be obvious to the Government that the witness' answer . . . is untrue"). Since Duggins has failed to show that the People had any independent source of knowledge as to the veracity of Ms. George's comments, the failure to correct those comments cannot be prosecutorial misconduct.

■ Because Duggins cannot establish the first two elements necessary to show that the People committed prosecutorial misconduct by failing to correct Ms. George's testimony, we need not address the third element and find no error. *See Stadtmauer*, 620 F.3d at 267 (when the defendant

■■■ ■■■ ■■■

"cannot meet his burden as to the first two of these elements, we need not address the third.").

## IV. CONCLUSION ·

The false token or writing requirement of 14 V.I.C. § 844 does not apply to prosecutions brought under 14 V.I.C. § 843(3), thus the People were under no obligation to enter a token or writing into evidence to prove Duggins's false or fraudulent statement or representation to the government. Likewise, because the mens rea requirement for a violation of section 843(3) is that a defendant must make the false or fraudulent statement or representation knowingly, we find no abuse of discretion in the trial court's decision to give an instruction that, to find Duggins guilty, the jury must determine that Duggins made a knowing misrepresentation. Duggins waived any argument based on the mention of the word "conspiracy" by eliciting that testimony himself and thus inviting any alleged error and, moreover, because he was not charged with nor convicted of conspiracy, the case law doctrines relating to multiple conspiracies, large and small, are in any event inapplicable. Finally, the People did not commit prosecutorial misconduct based on Ms. George's testimony that Duggins and one of the defense witnesses were friends who attempted to conceal Duggins's actions. Therefore, having found no error, we affirm the Superior Court's March 3, 2010 Judgment.